Christina M. WOODHAMS, Plaintiff,

v.

Diane MOORE, Defendant.

No. C–1–92–121.

United States District Court,
S.D. Ohio, W.D.

Jan. 11, 1994.

**518**

Joseph William Shea, III, Joseph W. Shea, III, Cincinnati, OH, for plaintiff.

Douglas Edward King, McCaslin, Imbus & McCaslin, Cincinnati, OH, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff's Motion for Prejudgment Interest (doc. 21), the Defendant's Memorandum in Opposition (doc. 25), and Plaintiff's Response to Defendant's Memorandum in Opposition (doc. 26).

A hearing on the Defendant's Motion was held on October 7, 1993. In rendering our decision of this matter, we have considered the documents admitted into evidence, the Plaintiff's proposed findings of fact and conclusions of law (doc. 33), and the Defendant's proposed findings of fact and conclusions of law (doc. 36). Accordingly, we set forth our findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On March 14, 1990, the Defendant Diane Moore struck a car in which the Plaintiff Christina M. Woodhams was riding.

2. As early as March 20, 1990, Ms. Moore's insurer, Nationwide Insurance Company ("Nationwide") was aware that the Plaintiff suffered from a pre-existing condi-

tion which had been aggravated by the accident with its insured.

3. Nationwide determined no later than July 26, 1990 that Diane Moore was liable for the accident that occurred on March 14, 1990.

4. On July 26, 1990, Nationwide's adjustor, Rick Deppe, requested that the loss reserve be set at $100,000.00 in light of $23,000 in existing medical bills submitted by the Plaintiff.

5. On February 27, 1991, Nationwide decided to hire a detective to investigate whether Plaintiff Christina Woodhams or her parents were not disclosing a known pre-existing handicap.

6. On October 14, 1991, Nationwide's representative reported that the outside detective agency found no evidence of a known pre-existing disability.

7. On December 11, 1991, Nationwide's adjuster reviewed the medical report from the Plaintiff's treating physician and stated "He [Dr. Koymen] goes on to say she was symptom free until the accident and the accident aggravated the condition."

8. On December 17, 1991, Nationwide's in-house medical reviewer, C. Eichenlaub, made an examination of the records and concluded that the accident caused the Plaintiff's pre-existing condition to become symptomatic.

9. On December 20, 1991, even though Ms. Eichenlaub had reported[1] that the accident forces disrupted the neck ligaments which resulted in her condition becoming symptomatic, the Nationwide adjuster, Mr. Boyd Murgul, asserted his belief that Nationwide was not responsible. He offered the Plaintiff only $5,000.00.

10. Despite all of this information, Nationwide continued to treat this case as a minor injury case and failed to make a good faith offer consistent with admitted liability and an objective and rational review of the severe nature of Plaintiff's injuries.

---

1. A note from Ms. Eichenlaub read:

"Boyd—It appears that the [claimant] had an 'unstable upper neck' due to a congenital malformation which was asymptomatic prior to the accident. Apparently the accident forces disrupted the neck ligaments which altered the vertebra lineup more, resulting in symptomatology, i.e.—left hand numbness." C. Eichenlaub.

11. Nationwide did not obtain an outside medical review of this case until obtaining a medical exam from Doctor Robert L. McLaurin on December 7, 1992, over two and one-half years after the accident.

12. Doctor Robert L. McLaurin testified at trial that he was not provided with a complete medical file for his review and did not see an important record, an MRI showing a spinal cord contusion, which he agreed would be a very significant finding. Trial Transcript at 64.

13. Plaintiff Christina Woodhams made a good faith effort to settle this case. As soon as her medical outlook was reasonably determinable (Nov. 11, 1991), the Plaintiff demanded a reasonable amount of settlement at $450,000.00 and, in good faith, reduced her demand to $300,000.00.

14. Nationwide, Defendant Diane Moore's insurer, failed to make a good faith offer and failed to rationally evaluate its risks and potential liability.

15. On May 14, 1993, this Court issued Judgment in favor of the Plaintiff and awarding $300,000.00 in damages. We held that "[a]lthough Ms. Woodhams' pain and suffering may have exceeded the amount she sought, in fairness, we have based our award upon her requested damages." Findings of Fact and Conclusions of Law (doc. 19).

16. Nationwide seems to have relied during in its evaluation of this case and throughout negotiations on a faulty legal theory. They argued that since Ms. Woodhams had a pre-existing condition which made her susceptible to injury, the accident could not have been the proximate cause of her injury. At trial this Court totally rejected that argument. We held that under Ohio law Ms. Woodhams need only prove that the "car accident was *a* proximate cause of her injuries. The fact that Ms. Woodhams had a pre-existing condition that placed her at greater risk than the average person does not alter her burden." Findings of Fact and Conclusions of Law, Document 19, at 6 (citations omitted).

17. On May 17, 1993, Plaintiff filed a timely Motion for Prejudgment Interest.

## CONCLUSIONS OF LAW

The award of prejudgment interest in Ohio is governed by statute. Ohio law states in pertinent part:

Interest on a judgment, decree or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

Ohio Rev.Code § 1343.03(C). The same code section sets the rate of interest at ten percent per annum. Ohio Rev.Code § 1343.-03(B).

The Ohio Supreme Court has defined "good faith effort" in the context of Ohio Revised Code § 1343.03 as (1) fully cooperating in discovery proceedings, (2) rationally evaluating the risks and potential liability of the action, (3) not attempting to unnecessarily delay the proceedings, and (4) making a good faith monetary offer of settlement or responding in good faith to an offer. *Kalain v. Smith*, 25 Ohio St.3d 157, 159, 25 OBR 201, 202, 495 N.E.2d 572, 574 (1986); *see also Digital & Analog Design Corp. v. North Supply Co.*, 63 Ohio St.3d 657, 590 N.E.2d 737 (1992).

It is well-accepted tort law that even though a plaintiff may have a pre-existing condition which makes the plaintiff more susceptible to injury, a defendant is liable for whatever aggravations of the condition that result from the defendant's conduct. *Shimman v. Frank*, 625 F.2d 80, 100 (6th Cir. 1980) ("Defendants must take their victim as they find him."); *Kantor v. McKinley*, 9 Ohio App.2d 243, 245, 38 O.O.2d 306, 307, 224 N.E.2d 141, 143 (Montgomery Co.1966) (aggravation of pre-existing back problem); *Pierson v. Hermann*, 3 Ohio App.2d 398, 32 O.O.2d 533, 210 N.E.2d 893 (Franklin Co.

1965) (holding that if a plaintiff has suffered a measurable or appreciable injury, or aggravation of an existing injury, the defendant is liable for all direct and proximate results); Restatement 2d of Torts § 461.[2] This is not a subtle theory of liability. Sometimes referred to as the "eggshell skull" plaintiff theory, it has been a part of our jurisprudence for nearly a century. *See* Prosser and Keeton on Torts, 292 (1984).

 Nationwide did not made a good faith effort to settle this case, because they failed to rationally evaluate their risks and potential liability. Instead Nationwide contended that since the Plaintiff's "os odontoideum"' existed before the collision, then the Defendant was not liable for aggravation of this condition. However, early-on Nationwide was aware that the Plaintiff had been healthy, active and asymptomatic before the collision. Nationwide was advised of this by the Plaintiff's physician and it was substantiated through their own investigations. Furthermore, Nationwide delayed in having an independent medical examination performed and then failed to provide the examining physician with a crucial MRI. This does not constitute a good faith evaluation of its risk.

Finally, we note that Section 1343.03 of the Ohio Revised Code was created to encourage insurance companies to settle lawsuits. We agree with Ohio law finding that:

> [i]t [is] repugnant to the purpose of the statute that an insurance company should be permitted to delay settlement efforts, or fail to make any settlement efforts at all, and limit its liability to the maximum stated in the policy. Accordingly, an insurance company can be held liable for prejudgment interest pursuant to R.C. 1343.03 in excess of any stated limits in its policy.

*Phoenix Phase I Associates v. Ginsberg, Guren & Merritt,* 23 Ohio App.3d 1, 5, 490 N.E.2d 634, 638–39 (Cuyahoga 1985); *In re Baker & Getty Financial Serv.* 93 B.R. 559, 569 at n. 7 (Bankr.N.D.Ohio 1988). To hold otherwise would make the statute meaning-

less when liability exceeded the limits of the policy. Therefore, Nationwide is liable for this prejudgment interest award.

## CONCLUSION

The Defendant's insurer, Nationwide Insurance Company relied on a faulty legal argument. This reliance will not protect them from the responsibility to adequately evaluate their risk in a lawsuit nor from their responsibility to negotiate in good faith. Accordingly, the Plaintiff is awarded prejudgment interest at the statutory rate of ten percent (10%) per annum from the date of the accident, March 14, 1990 until the date of our judgment, May 14, 1993.

SO ORDERED.

---

**2. § 461. Harm Increased in Extent by Other's Unforeseeable Physical Condition.**

The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.

Restatement 2d of Torts § 461 (1965).