LODER et al., Appellees,

v.

BURGER et al., Appellants.

[Cite as *Loder v. Burger* (1996), 113 Ohio App.3d 669.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–191.

Decided Aug. 26, 1996.

670

*Steven H. Slive* and *Michael J. Connick*, for appellees.

*Daniel F. Richards*, for appellants.

NADER, Judge.

This is an appeal from the judgment of the Court of Common Pleas for Lake County awarding prejudgment interest under R.C. 1343.03(C) to plaintiffs-appellees, Sara–Beth Loder et al.

On February 16, 1993, plaintiff-appellee Sara–Beth Loder, then approximately two and one-half years old, was bitten by a Labrador retriever belonging to defendants-appellants Charles E. and Donna Jean Burger ("appellants"). The appellants were covered by an insurance policy with Allstate Insurance Company ("Allstate"). Sara–Beth's parents, plaintiffs-appellees George W. and Mary A. Loder ("appellees"), brought this action on her behalf to recover for her injuries, medical expenses, and pain and suffering.

Appellants, who were defended by Allstate in the underlying action, initially disputed liability by relying on a number of arguments. They asserted that the child was teasing or tormenting the dog and that they did not actually own the dog, which they claimed belonged to their son. However, on the morning of trial, appellants stipulated liability under R.C. 955.28(B), Ohio's dog bite statute. Trial was held on the issue of damages. The jury returned a verdict awarding Sara–Beth $126,273 for her injuries, and awarding $4,000 to her parents for loss of consortium.

On November 3, 1995, appellees filed a motion for prejudgment interest pursuant to R.C. 1343.03(C), alleging that Allstate had failed to make a good faith effort to settle the case. The trial court conducted a hearing on the motion on November 30, 1995.

The hearing on this matter uncovered the following facts. After the attack, Allstate paid $9,555 of Sara–Beth's medical expenses. Appellees then hired an attorney to resolve the claim with Allstate. Counsel for appellees sent a letter to Allstate on July 1, 1994, notifying it that appellees had retained a lawyer. Allstate sent an acknowledgment letter to counsel for appellees on July 21, 1994, and informed him that the claims adjuster would be Regina Walker.

On July 27, 1994, counsel for appellees sent a second letter to Walker requesting information regarding the limits of the appellants' insurance policy.

On August 1, 1994, counsel for appellees sent a third letter to Walker, containing photographs of Sara–Beth's face so that she could review the condition of the child in order to discuss settlement.

On August 9, 1994, counsel for appellees sent a fourth letter to Walker, containing the report of Dr. Bahman Guyuron, who had examined Sara–Beth and reported on the extent of the scarring on her face. The letter informed Walker that the statute of limitations was fast approaching, and repeated the earlier request for information on the appellants' insurance policy.

On October 25, 1994, counsel for appellees sent a fifth letter to Walker, containing a summary of Sara–Beth's medical expenses, more photographs of her face, a copy of a supplemental report from Dr. Guyuron, and a third request for information regarding the coverage limits of the appellants' insurance policy. It also contained a demand for $500,000.

On October 28, 1994, counsel for appellees sent a sixth letter to Walker, which supplemented the summary of medical expenses, and requested a response to the previous correspondence.

On December 27, 1994, counsel for appellees sent a seventh letter to Walker. The letter explained once again that the two-year statute of limitations was approaching, and requested a response to the previous correspondence.

On January 9, 1995, Walker sent a letter to counsel for appellees with an offer to settle the case for $65,000.[1] Walker testified at the hearing that she had seen the photographs of Sara–Beth's face, read the reports from Dr. Guyuron, and reviewed the list of medical expenses. She did not seek an independent medical opinion. She testified that of the $65,000, she intended about one-third to cover Sara–Beth's legal fees, and the remaining $40,000 to compensate the girl for her injuries, pain and suffering, and future medical expenses.

Counsel for appellee testified that he had never received the letter, but steadfastly maintained that it was inadequate. He filed suit on February 14, 1995, just two days before the statute of limitations would run on Sara–Beth's claim.

On June 29, 1995, counsel for appellees filed a written demand for $500,000. On September 16, 1995, counsel for appellees attempted to obtain a copy of the insurance policy by serving a request for production of documents on Allstate. Counsel for Allstate indicated that the policy would be sent under a separate

---

1. In its findings of fact, the trial court mistakenly found that the offer was $64,000.

cover, but the policy was never mailed. On or about October 4, 1995, counsel for appellees called counsel for Allstate to discuss settlement. Counsel for Allstate indicated that he thought that Walker had made an offer of $60,000 or $65,000, but he would check with Allstate.

At a pretrial conference held October 6, 1995, counsel for Allstate confirmed that the offer to settle was $65,000. Counsel for appellees reduced the demand from $500,000 to $160,000. In response, counsel for Allstate increased the offer to $76,000, less credit for the $9,000 in medical expenses already paid, for a net settlement offer of $67,000. Largely because the new offer did not significantly exceed the first, counsel for appellees declined to accept. At some point, the court admonished counsel for Allstate that the offer was too low.

A few days after the pretrial, counsel for appellees again contacted counsel for Allstate in an attempt to settle the claim. Counsel for appellees reduced the demand to $120,000. Counsel for Allstate refused to settle, and did not make a counteroffer.

On the day of trial, the counsel for Allstate conceded liability under the dog bite statute. Counsel for appellees took the opportunity to again attempt to settle the case. He reduced the demand to $109,000, less a $9,000 credit for medical expenses already paid, for a net settlement of $100,000. Counsel for Allstate refused to settle. The case went to trial, and the jury awarded $130,273.

In a decision filed December 5, 1995, the trial court found that Allstate had indeed failed to make a good faith effort to settle the claim, and granted appellees' motion for prejudgment interest. Originally, the court assessed the interest from February 4, 1995.[2] The court later entered a *nunc pro tunc* entry assessing the interest from February 16, 1993, the date of the attack. Appellants filed this appeal on December 21, 1995.

Appellants assign only the following as error:

"The trial court abused its discretion by awarding prejudgment interest to plaintiffs."

R.C. 1343.03(C) provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to

---

2. The court probably meant February 14, 1995, which was the date when the complaint was filed.

settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The party seeking prejudgment interest bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 659, 635 N.E.2d 331, 348. The ultimate decision as to whether a party's settlement efforts constitute a failure to make a good faith effort is committed to the sound discretion of the trial court. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252. An appellate court will review the determination for abuse of that discretion. *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 845, 649 N.E.2d 1247, 1250–1251. An allegation that the trial court abused its discretion in awarding prejudgment interest is tantamount to alleging that the trial court acted unreasonably, arbitrarily, or unconscionably. *DiPiero v. Bianco* (Feb. 9, 1990), Trumbull App. No. 88–T–4090, unreported, 1990 WL 10958, at 2. Such judgments, which rely so heavily on findings of fact, will not be disturbed on appeal as being unreasonable or arbitrary if supported by some competent, credible evidence. *Smith v. Jaskowiak* (May 17, 1991), Trumbull App. No. 90–T–4365, unreported, 1991 WL 84230, at *2; *Wingard v. Johnson* (June 30, 1986), Portage App. No. 1628, unreported, 1986 WL 7310, at *1.

Where, as here, the defendant in a lawsuit is represented by an insurance company, the court's inquiry as to whether the defendant made a good faith effort to settle must focus on the settlement efforts of the insurance carrier. See *Moskovitz, supra*, 69 Ohio St.3d at 660, 635 N.E.2d at 348–349, citing *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 166–167, 25 OBR 207, 208–210, 495 N.E.2d 918, 920–921. The Supreme Court of Ohio has indicated that a trial court should decline to impose a prejudgment interest penalty on the party obligated to pay the judgment where that party (1) fully cooperated in discovery, (2) rationally evaluated risks and potential liability, (3) did not attempt to delay the proceedings unnecessarily, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus.

Appellants initially argue that, because they honestly believed that liability was disputed, they were under no obligation to make any settlement offers whatsoever. See *Id.* at 159, 25 OBR at 203, 495 N.E.2d at 574 ("If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."). We reject this argument. Appellants were apparently baby-sitting Sara–Beth when their dog attacked her. Their asserted defenses that their son actually owned the dog, and that two-and-one-half-year-

old Sara–Beth was teasing or tormenting the dog, are patently untenable.[3] Because they relied on faulty defenses, appellants' belief in their own immunity was not objectively reasonable. See *Woodhams v. Moore* (S.D.Ohio 1994), 840 F.Supp. 517, 520. A party holding an objectively unreasonable belief in nonliability is not excused from the obligation to enter into settlement negotiations, and cannot insulate himself from liability for prejudgment interest by relying on his own naivete. See *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 20, 615 N.E.2d 1022, 1031–1032 (party whose belief in nonliability was unreasonable was held liable for prejudgment interest).

▮ Appellants alternatively argue that the trial court found that Allstate had failed to make a good faith attempt to settle this claim solely because Allstate's final net settlement offer was only about one-half of the eventual verdict. They cite *Black v. Bell* (1984), 20 Ohio App.3d 84, 20 OBR 105, 484 N.E.2d 739, as authority for their assertion that a trial court abuses its discretion in awarding prejudgment interest based only on a comparison of the size of the offer and the size of the verdict. In *Black,* the defense offered only $25,000 to settle. The jury awarded $117,200. The trial judge ordered the defendant to pay prejudgment interest. The Court of Appeals for Cuyahoga County reversed, and stated:

"The statute [R.C. 1343.03(C) ] affords no remedy, nor does it deny a remedy, because one or both parties predict or fail to predict the ultimate verdict accurately. If the legislature intended to allow prejudgment interest whenever the verdict exceeded or approximated the plaintiff's settlement offer, the statute would so state. At most, the proximity of one party's settlement offer to the ultimate verdict is conceivably some circumstantial evidence of the reasonableness of that party's evaluation. It falls far short of demonstrating that such party made a good faith effort to settle or that the adverse party failed to do so. Evidence at a trial may differ markedly from reasonably anticipatable evidence at any stage of negotiations, just as anticipatable evidence may have varied earlier.

"Fortuitous foresight does not demonstrate good faith settlement efforts. Nor does poor predictive ability necessarily establish a failure to make such efforts." *Id.*, 20 Ohio App.3d at 88, 20 OBR at 109, 484 N.E.2d at 743.

In essence we have agreed with these principles. *Jones v. Gray Drug Fair, Inc.* (Nov. 16, 1990), Ashtabula App. No. 89–A–1465, unreported, 1990 WL 178941, at *7 (holding that a prevailing party could not meet her burden of

---

3. Even if appellants' assertion that their son owned the dog were true, they would still be subject to R.C. 955.28(B), inasmuch as they clearly were the keepers of the dog. See *Khamis v. Everson* (1993), 88 Ohio App.3d 220, 623 N.E.2d 683 (keeper of the dog is one who possesses and controls the premises where the dog lives). Also, under Ohio law, a child under three cannot be held to have teased or tormented a dog. *Ramsey v. King* (1984), 14 Ohio App.3d 138, 14 OBR 154, 470 N.E.2d 241.

showing a lack of good faith effort to settle by relying only on the difference between the settlement offers and the eventual verdict). We also agree that the mere fact that the final net settlement offer amounted to barely fifty-two percent of the eventual verdict at best supplies weak circumstantial evidence of a lack of good faith effort to settle.[4]

However, there is much more evidence in the record to support the trial court's conclusion that Allstate failed to make a good faith effort to resolve this case. Despite repeated attempts to negotiate, Walker failed to make an offer until twenty-three months had elapsed after the dog attack. In *Kline v. Ross* (Mar. 15, 1991), Lake App. No. 90-L-14-066, unreported, 1991 WL 35637, we held that a party's pretrial activities may be considered when determining a party's good faith. In that case, we suggested that an insurance company's eighteen-month failure to respond to attempts to negotiate could be sufficient to establish the lack of a good faith effort to settle. A settlement offer made this close to the statute of limitations deadline allows neither careful consideration nor further negotiations. The policy of R.C. 1343.03(C) requires a party to make more determined efforts to settle the case before litigation begins than Allstate has exhibited here.

Additionally, Allstate did not respond with a significantly increased offer after counsel for appellees repeatedly reduced the demand. In *Hughey v. Lenkauskas* (Sept. 30, 1987), Lake App. No. 12-014, unreported, 1987 WL 18001, we upheld the decision of the trial court to award prejudgment interest where the prevailing party repeatedly reduced the demand from $375,000 to $60,000, and where the opposing party did not bother even to make a nominal effort to counter. The second net settlement offer of $67,000, which surpassed the initial offer of $65,000 by a mere three percent, does not constitute an aggressive effort toward settlement as is required by R.C. 1343.03(C). See *Sindel v. Toledo Edison Co.* (1993), 87 Ohio App.3d 525, 533, 622 N.E.2d 706, 711 (statute requires an "aggressive effort at prejudgment settlement").

Furthermore, counsel for Allstate did not increase the second net settlement offer during the settlement negotiations at the commencement of trial after stipulating liability. Robert DiCello, an expert on personal injury litigation called

---

**4.** Walker testified that only sixty-six percent of the offer was intended to compensate Sara-Beth. If we were to consider that Allstate in reality offered only $40,000, then the offer would amount to just thirty-one percent of the final verdict. This would constitute stronger circumstantial evidence of a lack of good faith effort to settle. However, one consequence of the American Rule is that, because a party is to pay his or her own legal fees, and because those fees are usually deducted from the money that is intended to compensate the plaintiff, the plaintiff's net compensation is nearly always less than the value of the injury. We do not believe it to be significant that in this case, Walker recognized this practice. Therefore, we view the entire $65,000 as intended to compensate the plaintiff for the purpose of comparing the settlement offer to the eventual verdict.

by Allstate in the prejudgment interest hearing, admitted on cross-examination that the failure to raise the offer at that point was unreasonable.

Last, Walker testified that her valuation of the case as being worth approximately $65,000, less one-third for attorney fees, rested solely on her experience. She did not seek an independent medical opinion. In *Detelich v. Gecik* (1993), 90 Ohio App.3d 793, 798, 630 N.E.2d 771, 774, we held that a party who "relied on nothing but his own judgment, ignor[ed] the evaluation of the doctors and attorneys, fail[ed] to read [the plaintiff's] depositions and [chose] not to seek other medical evaluation" failed to rationally evaluate the case. In this case, although Walker testified that she had read Sara–Beth's deposition and the appellees' medical reports, her reliance on her own abilities to estimate the value of the claim and failure to seek an independent medical opinion constitute evidence of a failure to rationally evaluate the claim. While not sufficient in and of itself to impose liability for prejudgment interest, we consider this failure to elicit a neutral appraisal as evidence which a trial court may properly consider when assessing a party's faith in its settlement efforts.

There is ample evidence beyond the mere disparity between the final net settlement offer and the eventual verdict upon which the trial court could have determined that Allstate failed to make a good faith effort to settle the underlying claim. Because the judgment is supported by competent, credible evidence, we cannot say that it is unreasonable or arbitrary. Thus, the court below did not abuse its discretion in awarding prejudgment interest.

Appellants' assignment of error is meritless, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and EDWARD J. MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.