JOURNAL ENTRY AND OPINION
These consolidated appeals arise from a personal injury action involving two separate rear-end automobile collisions. Because liability was stipulated at the trial, the only issue was the amount of damages. The appeals challenge the trial court's judgment on the jury verdict for $88,000 and subsequent award of prejudgment interest. For simplicity, the parties shall be referred to by their proper names.
Lisa Guerrieri was driving a vehicle that was struck from behind on two occasions approximately one month apart. The driver of the first car was Michael Nikitas; the driver of the second car was Kerry Ebel. Guerrieri filed a personal injury complaint against Nikitas, Ebel, and Allstate Insurance Company ("Allstate"), her own uninsured motorist carrier, because Nikitas had no insurance coverage.
The matter ultimately proceeded to a trial against Ebel and Allstate, and the jury awarded Guerrieri $88,000 jointly and severally against them because it could not separately apportion the damages from the two collisions.[1] Guerrieri requested, and the trial court granted, prejudgment interest on the award. Allstate and Ebel appeal from the judgment on the jury verdict in Appeal Nos. 73869 and 73870, and from the award of prejudgment interest in Appeal Nos. 75132 and 75133. They filed a joint brief challenging the jury verdict and separate briefs challenging the award of prejudgment interest.
Their first assignment of error in Case Nos. 73869 and 73870 challenges the trial court's exclusion of testimony from defense medical expert Dr. Gordon as follows:
 THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF THE APPELLANT'S [SIC] EXPERT MEDICAL WITNESS.
This assignment lacks merit.
Allstate and Ebel argue the trial court excluded the deposition testimony of their medical expert improperly, because his written report of August 4, 1997 adequately disclosed the basis of his deposition testimony on October 23, 1997.
It is well established that the trial court has broad discretion to determine whether there is a breach of the rules governing the exchange of expert reports and to fashion the remedy for any violation. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, syllabus. In Nakoff, the Supreme Court, reversing this court, held that, to constitute a reversible abuse of discretion, the trial court's ruling:
 must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.
Id. at 256. Having reviewed the record in compliance with this "stringent" standard, id., we conclude that Allstate and Ebel failed to show an abuse of discretion.
The record shows that Gordon's deposition testimony commented for the first time on reports from other physicians. His testimony specifically referred to a report of Dr. Zaas and notes of Dr. Ross, although Gordon's own pretrial expert report stated he had no information from either of these two physicians.
Loc.R. 21.1 specifically mandates the timely exchange of written expert reports and supplemental reports to adequately disclose expert opinions on issues in the case.[2] It further specifically provides for the exclusion of expert testimony when such disclosure is not made in accordance with the rule.
The record in the case at bar reveals that the report of Dr. Zaas and notes of Dr. Ross about which Gordon proposed to testify had been provided to defense counsel before the date of his report but he did not express any opinion on either matter in his report. Nor did he supplement his report to express his new views on the documents or treatment these two physicians provided to Guerrieri. Under the circumstances, the trial court could properly find that either Gordon's original report should have referred to the substance of these materials or Gordon should have supplemented his original report to disclose his views on these matters.
Three additional matters Gordon testified about during his deposition present a somewhat closer question. Gordon commented for the first time on notes concerning two epidural blocks and a third MRI performed on Guerrieri. This information was given to Gordon after his original report but prior to his deposition testimony. Unlike the documents prepared by Drs. Zaas and Ross, Gordon's original report could not have contained this information. However, the trial court could also properly find that Gordon should have filed a supplemental report concerning these matters prior to his deposition testimony. As set forth above, Loc.R. 21.1 I (B) expressly provides for supplementation of expert reports and states that "[a]n expert will not be permitted to testify or provide opinions on issues not raised in his report."
The trial court explained its policy of strictly enforcing the rules governing disclosure of expert witness testimony to prevent trial by "ambush." Moreover, the court recognized that the failure to provide complete or supplemented reports tended to impair an opponent's ability to effectively cross-examine an expert witness. These precise concerns are consistent with well established principles expressed by the Supreme Court inSchumakeer v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367, 370-371. Accord, e.g., Walker v. Holland(1997),117 Ohio App.3d 775, 786-791. As the Supreme Court noted in Schumaker,
"[t]his duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced." Id. at 370.
Some of Gordon's deposition testimony was adequately disclosed in his written report. This included his ultimate opinions and comments concerning Guerrieri's urgent care and her first two MRI records. Defendants, however, did not identify these portions of the deposition in the trial court for the purpose of salvaging part of the testimony. Instead, they sought to introduce Gordon's entire deposition testimony, including the portions relating to matters not adequately disclosed. The issue is what to do when some of the deposition testimony was properly disclosed and some was not.
In Nakoff, this court reversed the trial court's exclusion of the entire deposition testimony, holding that the trial court abused its discretion by excluding that testimony not in violation of Loc.R. 21. However, the Supreme Court reversed this court, found the trial court did not abuse its discretion, and affirmed the exclusion of the entire deposition. The Supreme Court held that a party's failure to delete matters tainted by a violation of Loc.R. 21 justified exclusion of the entire proffered deposition. Id. at 257-258.
The Supreme Court explained that a trial court had no responsibility to sift through the deposition to cull the good from the bad. Under the circumstances, while we may not have reached the same conclusion as the trial court, defendants have not met the stringent standard set in Nakoff that the trial court's ruling was so palpably and grossly violative of fact or logic that it evidenced "perversity of will," "defiance of judgment," or the exercise of "passion or bias."[3]
Defendants seek to show judicial bias by referring to (1) statements made by the trial court when it explained its ruling and (2) an order entered subsequently by the same trial judge in a separate case. The trial court's statement-that its strict application of the rules was particularly warranted in cases of testimony by "professional witnesses" who testified frequently does not evidence "bias." It is not unreasonable to expect that those familiar with the system by repeated participation might be more knowledgeable than those with less experience. Superior knowledge provides a legitimate basis for demanding strict compliance with established rules. In any event, regardless of whether witnesses have prior experience providing expert testimony, the trial court may properly enforce duly promulgated rules as written. Strict compliance with such rules by all litigants will foreclose the possibility of sanctions.
Defendants also seek to establish judicial bias by referring to an order entered by the same trial judge in another case approximately eight months after his ruling excluding Gordon's testimony in the case at bar. Initially, we note that such material is not properly made a part of the record in the case at bar by stapling it to a brief on appeal. Even if we considered the material, however, it does not establish judicial bias.
The subsequent order, journalized July 28, 1998 in Hegedus v.Johnson, Common Pleas Court Case No. CV-290943, directed certain insurers to disclose income paid to Dr. Robert Corn and/or Highland Musculo-Skeltal Associates, Inc. Gordon's report in the case at bar indicates that he was a member of this same practice group on August 24, 1997. This court ultimately granted a writ of prohibition to prohibit the trial court and a special master from enforcing this discovery order. State of Ohio ex rel. AllstateIns. Co. v. Gaul (May 13, 1999), Cuyahoga App. No. 75048, unreported.
The Ohio Supreme Court has recognized that one cannot prove bias by a judge against a party merely by showing the existence of an adverse ruling, even if the ruling is later determined to be erroneous. E.g., In re Disqualification of Kimmel (1987),36 Ohio St.3d 602. This would appear to be particularly true where, as here, it is necessary to string together several cases to make the argument of bias. In any event, the subsequent discovery order in Case No. CV-290943 does not logically evidence bias or prejudice at the time of the trial court's ruling excluding Gordon's testimony in the case at bar because it was not entered until eight months after the ruling. If a party believes a trial judge is biased, the party should file an affidavit of prejudice before trial and not wait until after an adverse judgment. Under the circumstances, defendants have failed to show that the trial judge was biased against them or abused his discretion by enforcing the expert discovery rules as he did in the case at bar.
Accordingly, the first assignment of error is overruled.
The second assignment of error follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING PHOTOGRAPHIC EVIDENCE OF PROPERTY DAMAGE WHEN THE EVIDENCE WAS RELEVANT AND ALREADY IDENTIFIED AS ACCURATE.
This assignment lacks merit.
Allstate and Ebel argue on appeal that the trial court improperly did not permit the introduction into evidence of a single photograph of the rear bumper of Guerrieri's car. The rear bumper had been repaired after the first collision and the photograph was taken after the second collision. The excluded photograph has been included in the record for our review on appeal.
The record shows that Allstate did not seek to introduce the photograph or object to its exclusion. Only Ebel sought to introduce the photograph. The trial court excluded it, however, because Ebel did not identify or produce the photograph to Guerrieri during discovery. Ebel admitted she failed to supplement her discovery, but argued she showed the photograph to Guerrieri during her deposition. The trial court stated that it would adhere to its policy of strictly following the discovery rules and exclude the photograph to prevent "trial by surprise."
It is well established that a trial court's determination whether to admit evidence will not be reversed on appeal absent a clear abuse of discretion resulting in material adverse prejudice. Evid.R. 103 (A). This is particularly true, as noted above, when the exclusion results from a discovery violation. Under the circumstances, appellants have failed to show any reversible error.
Accordingly, the second assignment of error is overruled.
The third assignment of error follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING TWO LAY WITNESSES TO PRESENT EXPERT TESTIMONY ON THE ISSUE OF PROPERTY DAMAGE CAUSED IN THE ACCIDENTS.
This assignment lacks merit.
Allstate and Ebel complain that Guerrieri and Adrian Trifiletti, her fiance, testified that the bumper to her car was designed to withstand impact of five miles per hour without damage. Guerrieri stated that was the specification for the bumper to her car. Trifiletti, the sales manager of a car dealership with twelve years of experience, stated that was the specification for most cars. The trial court sustained Allstate's objection when he was asked on redirect about whether Guerrieri's particular bumper could have been damaged by an impact less than five miles per hour.
Under the circumstances, appellants have failed to show any reversible error. Guerrieri indicated she had sufficient personal knowledge of the bumper specifications for her car. The weight or credibility of her testimony was for the jury. From his twelve years of experience at the car dealership, Trifiletti had some basis to state what automobile bumper specifications were generally and the trial court prevented him from stating the strength of Guerrieri's particular bumper.
Even if there were any error in admitting any of this information, as appellants contend, it was harmless, under the circumstances of this case. There was some evidence from each driver that each was in fact driving at least five miles per hour when each struck the rear of Guerrieri's vehicle. Thus, even under defendants' theory, the information was, at most, cumulative to other information properly presented to the jury.
Accordingly, the third assignment of error is overruled.
The fourth assignment of error follows:
 THE TRIAL COURT'S FAILURE TO PERMIT DIRECT EXAMINATION OF DEFENDANT NAKITIS RELATIVE TO HIS UNINSURED STATUS TO REBUT THE TESTIMONY OF APPELLEE ON THIS ISSUE IN HER CASE IN CHIEF WAS ERROR.
This assignment lacks merit.
Allstate and Ebel argue, with little discussion, that the trial court improperly prohibited them from questioning Nikitis, the driver of the vehicle that struck Guerrieri the first time. At the outset of his testimony, on direct examination by Allstate, Nikitis stated he was driving a car owned by his employer, a car dealer. He stated that dealers usually carry their own insurance, he believed the car he was driving was insured, and he did not personally insure the vehicle. The trial court did not permit any further questioning about his beliefs or knowledge of his insurance status. Ebel asked no questions of Nikitis and did not object to the trial court's ruling.
During trial, Guerrieri argued that Nikitis knew he was uninsured and told her at the time of the accident not to call the police to make a report. Allstate argues it was not permitted to rebut this claim by questioning Nikitis about his knowledge of his insurance status. As reflected in the following excerpt, however, the transcript refutes Allstate's argument:
 [Counsel for Allstate] : Did you have insurance on this vehicle? Did you personally have insurance on this vehicle?
[Nikitasi : No.
Q. And why not?
 A. The dealer usually carries insurance for his cars that he owns.
Q. Has that been the practice in 27 years?
A. Yes.
Q. Did you think this car had insurance?
A. Yes.
(Tr. 216.) The trial court was not required to permit Allstate to question defendant further about his knowledge of his insurance status.
Following cross-examination by plaintiff's counsel, during which Nikitas stated Guerrieri's testimony was not truthful, counsel for Allstate elicited additional testimony under redirect, but did not ask any further questions about Nikitas' insurance status. Under the circumstances, Allstate has failed to show that the trial court abused its discretion or that any prejudice resulted.
Accordingly, the fourth assignment of error is overruled.
The fifth assignment of error follows:
 THE TRIAL COURT'S REPEATED SUA SPONTE OBJECTIONS AND COMMENTS MADE DURING THE COURSE OF THE TRIAL WAS IMPROPER.
This assignment lacks merit.
Allstate and Ebel argue that on at least one occasion the trial court commented on the propriety of questions to Guerrieri and her fiance. They complain that, to explain why her expert witness was difficult to hear on the videotape, the trial court stated that the witness was in ill health. Finally, they also complain that the trial court recalled the jury to give an omitted instruction concerning Guerrieri's life expectancy. Their three-paragraph argument in their brief on appeal, however, does not comply with App.R. 16 by showing any transcript page references to support their claims.
As a result of our review of the record, we find that appellants have failed to show the trial court abused its discretion or committed reversible error. E.g., MetaullicsSystems v. Molten Metal Equip. Innovations, Inc. (1996),110 Ohio App.3d 367, 369-370. After reviewing the entire testimony of Guerrieri and her fiance Trifiletti, we do not believe that the trial court's conduct during the questioning of these witnesses conveyed any impression whatsoever to the jury concerning the judge's views about the case or the credibility of their testimony.
There is no indication that anything the trial court said about the expert witness had any influence whatsoever on the jury. The statement that Dr. Leizman "wasn't feeling too well" was offered before playing his videotaped testimony. Courts are free to help jurors struggling with technical equipment to adjust to deficiencies of sound on a video tape.
Finally, Ebel was the only party that objected to the trial court's supplemental instructions on life expectancy. In any event, neither party complains about the substance of these instructions or the fact that the trial court had a duty to instruct the jurors on the governing law. Contrary to their arguments, none of these contentions, alone or in combination, show that the trial court improperly expressed its opinion or influenced the jurors on the merits of the case.
Accordingly, the fifth assignment of error is overruled.
The sixth assignment of error follows:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO PROPERLY INSTRUCT THE JURY ON THE ISSUE OF INDIVISIBLE INJURIES AS SET FORTH IN PANG V. MINCH.
This assignment lacks merit.
Allstate and Ebel argue that the trial court improperly instructed the jury. However, the record shows they failed to preserve this argument. First, their joint brief on appeal again does not designate any portion of the record to support the claim. App.R. 16 (A) (7). Moreover, our review of the transcript reveals neither party objected to the trial court's instructions before the case was submitted to the jury for deliberation as required by Civ.R. 51 (A). Ingram v. K-Mart Corp. (July 29, 1993), Cuyahoga App. No. 63206, unreported at pp. 4-5 (citingSchwartz v. Wells (1982), 5 Ohio App.3d 1.) A supplemental transcript from proceedings as the jury returned for deliberations on the following day reveals again that neither party objected to the instructions about which they now complain in this assignment of error on appeal.
It appears that both Allstate and Guerrieri submitted proposed instructions to the trial court, but neither party filed them with the clerk of court. The record contains no such proposals from Ebel. Discussion, if any, concerning the proposed instructions was not made on the record. Even on appeal, after additional time to formulate their arguments, defendants' arguments concerning the trial court's instructions are obscure. Under the circumstances, we find any claim of error to be waived.
We do note, however, that the trial court specifically instructed the jury, almost verbatim, on both the fourth and fifth paragraphs of the syllabus in Pang v. Minch (1990), 53 Ohio St.3d 186. Defendants have not articulated or shown that any prejudice resulted from the trial court's instructions.
Accordingly, the sixth assignment of error is overruled.
The final assignments of error challenge the trial court's award of prejudgment interest. Allstate and Ebel's assignments of error in Case Nos. 75132 and 75133, respectively, follow:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR PREJUDGMENT INTEREST WHERE THE EVIDENCE FAILED TO ESTABLISH LACK OF GOOD FAITH ON THE PART OF ALLSTATE INSURANCE COMPANY'S EVALUATIONS AND NEGOTIATIONS CONDUCTED IN THIS CLAIM. THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST TO PLAINTIFF, LISA GUERRIERI.
These assignments lack merit.
Allstate and Ebel argue the trial court improperly found they were liable for prejudgment interest under R.C. 1343.03 (C), because they failed to make a good faith effort to settle the tort claims in this case. Allstate, Guerrieri's uninsured motorist carrier, was responsible for any damage caused by Nikitas, the uninsured motorist who caused the first collision, whereas Ebel was responsible for any damage caused by the second collision.[4]
It is well established that a trial court's determination whether the parties respectively made a good faith effort to settle the action under R.C. 1343.03 (C) will not be reversed on appeal absent an abuse of discretion. E.g., Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 658, citing Ziegler v.Wendel Poultry Serv., Inc. (1993), 67 Ohio St.3d 10, 20. After reviewing the record in compliance with this standard, we find that defendants failed to show the trial court abused its discretion or committed reversible error by awarding prejudgment interest in the case at bar.
The record shows that the two rear-end collisions involved in this case occurred on January 4, 1996 and February 6, 1996, respectively. Guerrieri filed this action on April 17, 1996, and was still in the early stages of undergoing medidal treatment. In February 1997, after providing substantial medical records during discovery, she made an initial demand of $65,000 to settle her claims against both defendants. By this time she had already incurred more than $7,500 in medical bills.
Allstate responded with a counteroffer for $4,000, plus $3,492.01 in medical payments coverage. Although this offer was for less than the amount of medical bills Guerrieri incurred by that date, Allstate's own computerized claim valuation system estimated its own liability in a higher range, between $12,500 and $14,792. Ebel made no offer of settlement. The trial court concluded that defendants' failure to provide certain medical information to their own expert hampered their rational evaluation of their potential liability in the case.
Guerrieri continued to undergo medical treatment and incur additional medical expenses throughout the course of the proceedings. By the time of trial she had allegedly incurred approximately $10,800 in medical bills and $2,000 in lost wages as a result of the accidents. Nevertheless, she reduced her settlement demand.
Approximately one month prior to trial, Allstate offered to settle the claim against it for $20,000, plus the $3,492.01 in medical payments coverage. Ebel offered to pay $10,000. No settlement was reached and trial began on December 1, 1997. Defendants stipulated to liability at trial and the jury awarded $88,000 damages against them jointly and severally.
In a two-page journal entry, the trial court found that defendants failed to make a good faith effort to settle the litigation, did not rationally evaluate their risks and potential liability, and attempted to delay the proceedings. (Journal Entry and Order at p. 2.) The court specifically noted that "[d]espite the fact that Plaintiff apprised them of her ongoing, continual medical care, Defendants failed to keep their own expert informed of Plaintiff's medical condition beyond the first five months of her treatment. (Id. at Para. 4.)
When liability is clear, as in the case at bar, the policy of R.C. 1343.03 (C) requires an insurer to make a determined effort to settle a claim prior to trial. Loder v. Burger (1996),113 Ohio App.3d 669, 676. There is evidence to support the trial court's findings that defendants did not make such an effort to settle the claims in this case.
Every trial presents conflicting evidence. It is precisely the role of the trial court to resolve such conflicts in the evidence and to determine the credibility and weight to be given the evidence. The trial court chose to credit Guerrieri's version of events and to discount that presented by defendants. While we may not have reached the same determination as the trial court, we cannot substitute our judgment or conclude that it acted unreasonably, arbitrarily, or unconscionably.
Accordingly, the final assignments of error in Case Nos. 75132 and 75133 are overruled.
Judgments affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE: PJ., and
ANNE L. KILBANE. J., CONCUR. _____________________ DIANE KARPINSKI JUDGE
[1] Nikitas was ultimately dismissed as a party to the litigation.
[2] Loc.R. 21.21 (B) provides as follows: (B) A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than thirty (30) days prior to trial. The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted totestify or provide opinions on issues not raised in his report.
(Emphasis added.)
[3] Defendants also complain that the trial court did not grant a mid-trial motion for continuance to enable them to call Gordon as a live witness to cure any problems with his deposition testimony. It is well established, however, that rulings on motions for a continuance, even when no penalty is involved for discovery violations, are subject to the same abuse of discretion standard of review. Contrary to defendants' argument, trial courts are not required to accommodate their litigation strategy when it involves an abuse of the discovery process. Under the circumstances, we find no abuse of discretion in denying their mid-trial motion for continuance to cure a self-created discovery violation.
[4] Because Guerrieri's claims for prejudgment interest were made under R.C. 1343.03 (C) only, we do not consider whether she was entitled to prejudgment interest against Allstate as her own uninsured motorist carrier pursuant to R.C. 1343.03 (A). SeeLandis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339.