OPINION
{¶ 1} Appellant Deanna Marchionda timely appeals the denial by the Mahoning County Court of Common Pleas of her request for prejudgment interest from Appellee, Ryan T. Casey. Appellant sustained personal injuries as a result of a motor vehicle accident. Appellee conceded liability at trial. Appellant argues on appeal that the trial court's decision denying her prejudgment interest was against the manifest weight of the evidence and an abuse of discretion. Appellant asserts that Appellee, by and through his insurers, failed to rationally evaluate the case, negotiate, and extend a good faith offer to settle the matter. For the following reasons, however, Appellant's assignments of error lack merit and the trial court's decision is affirmed.
 {¶ 2} Appellant asserts two assignments of error on appeal, which are addressed collectively herein. She claims:
 {¶ 3} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR PRE-JUDGMENT INTEREST PURSUANT TO R.C.1343.03(C).
 {¶ 4} "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} R.C. § 1343.03(C) provides for prejudgment interest to be paid by the negligent party if, following a post judgment hearing, the trial court finds:
 {¶ 6} "* * * the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case * * *."
 {¶ 7} A decision whether a party exercised good faith with respect to efforts to settle a case is left to the sound discretion of the trial court. LeMaster v. Huntington Natl.Bank (1995), 107 Ohio App.3d 639, 669 N.E.2d 295, appeal not allowed 75 Ohio St.3d 1497, 664 N.E.2d 1293; Lewis v. Alfa LavalSeparation, Inc. (1998), 128 Ohio App.3d 200, 714 N.E.2d 426. Thus, a decision will not be overturned on appeal unless an abuse of discretion is established. An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Further, this Court has held that, "[a] court's decision to deny interest must be so violative of logic that it evidences a perversity of will, defiance of judgment, and the exercise of passion or bias in order to amount to an abuse of discretion." Miller v. VanFleet, 7th Dist. No. 03 MA 200, 2004-Ohio-7214, ¶ 8, citing Andrews v. Ruozzo, 7th Dist. No. 99CA265, 2, citing Cox v. Oliver Mach. Co. (1987),41 Ohio App.3d 28, 38, 534 N.E.2d 855.
 {¶ 8} The burden of establishing an abuse of discretion rests with the party seeking prejudgment interest. Loder v. Burger
(1996), 113 Ohio App.3d 669, 674, 681 N.E.2d 1357.
 {¶ 9} The Ohio Supreme Court has identified four factors to consider when determining whether a party has failed to make an honest effort to settle a case. Kalain v. Smith (1986),25 Ohio St.3d 157, 159, 495 N.E.2d 572. The Kalain Court stated,
 {¶ 10} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." Id.
 {¶ 11} The Kalain Court also cited with approval the Fifth District's Appellate Court's decision in Dailey v. NationwideDemolition Derby, Inc. (1984), 18 Ohio App.3d 39,480 N.E.2d 110, paragraph one of the syllabus, which held in part that, "the term `good faith effort to settle' means an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage."
 {¶ 12} Appellee admitted liability in the instant matter and there is no contention that Appellee delayed the proceedings or discovery. Appellee also made several offers in an attempt to settle. Accordingly, the issue is whether Appellee rationally evaluated his risks and whether he made a good faith settlement offer.
 {¶ 13} Appellant argues that Appellee, through his counsel and insurance carriers, failed to rationally evaluate the risks in this case based on the fact that there was no evidence tending to impeach Appellant's testimony and there was no medical evidence contrary to Appellant's physicians' testimony which related her injuries specifically to this accident. Appellant also stresses the jury's sizeable award in this case, $103,823, and the fact that Appellee's highest offer, extended on the morning of trial, did not exceed Appellant's medical expenses of approximately $9,000.
 {¶ 14} Appellant and Appellee were involved in a motor vehicle accident on November 30, 1999. Liability was clear. Appellee lost control of his car, crossed the center of the road, and struck Appellant's vehicle. The police were called to the scene. The vehicles incurred minor damage. Appellant denied injury at the scene, and she did not seek emergency treatment. She was 22-years-old at the time of the accident and she did not have any known pre-existing conditions relative to her back.
 {¶ 15} Appellant sought treatment the next day from her family physician. She had complaints of cervical, thoracic, and low back pain. Her doctor referred her to physical therapy treatment, and she completed the recommended course of therapy. There was an approximately three and one-half month period without Appellant seeking or receiving treatment. Thereafter, Appellant presented to her family physician with significant pain. She again underwent physical therapy, which resulted in relief from her cervical and thoracic pain. However, Appellant continued to complain of low back pain. She was referred to a chiropractor for manipulation and also received a spinal joint block injection. Both treatments failed to provide relief, and her doctor described her pain as permanent. Appellant incurred approximately $9,000 in medical expenses.
 {¶ 16} In February of 2001, Appellant's physician issued a letter in which he concluded that the injuries Appellant sustained as a result of the November, 1999, motor vehicle accident were permanent. (Plaintiff's Exh. 26.) This letter was provided to Appellee's counsel on March 12, 2001.
 {¶ 17} Appellee had insurance coverage from two separate companies. His primary coverage was from Nationwide Insurance Company in the amount of $25,000. Appellee's excess insurance carrier was Ohio Casualty Company with $75,000 coverage, thus it had $50,000 exposure. Both companies appointed claims adjusters to handle Appellant's claim. Nationwide had adjuster Mike Ward, and Ohio Casualty had Pam Baechle handling the claim. Ward had been a Nationwide adjuster since 1982, and Baechle had been an adjuster for eleven years. Baechle testified that she allowed Ward to primarily handle this case because she did not believe that it would ever exceed Nationwide's $25,000 in coverage. (Hearing Tr., pp. 20, 170.)
 {¶ 18} Further, Nationwide had in-house counsel handling the case. Counsel had 10 years experience in insurance defense litigation with Nationwide. (Hearing Tr., pp. 208-209.)
 {¶ 19} Appellee's counsel and claims adjusters presented a united front at the prejudgment interest hearing. They each testified that they looked at Appellant's claim as suspect based on the low-impact nature of the accident, Appellant's lack of injury at the scene of the accident, and the fact that Appellant had an almost four-month gap in her treatment. Thus, Appellee's counsel and adjusters testified that they valued Appellant's claim based on her initial doctor consults and physical therapy treatment, which were approximately $1,500. Appellee did not consider any of Appellant's treatment costs or pain and suffering beyond her initial course of therapy in valuing her claim.
 {¶ 20} Appellee never had Appellant or her records reviewed by a medical professional. Ward and insurance counsel indicated that they felt a medical review was unnecessary since all of Appellant's claims were subjective and her doctors could not pinpoint the medical cause of her pain. In addition, Appellant's MRI showed no underlying problems, but her doctor did note that Appellant showed objective signs of muscle weakness. Appellee's counsel and claims adjuster described Appellant's case as one of "classic overtreatment." (Hearing Tr., pp. 82, 83, 84, 87, 101, 105, 151, 219, Plaintiff's Exh. 26.)
 {¶ 21} Appellee also stressed the fact that Appellant's physician, Dr. Koval, described her injuries as "resolved" in his notes. These notes are not before this Court. However, this issue was discussed at Dr. Koval's deposition. He attempted to explain that his use of the word "resolved" meant that he was finished treating Appellant and that he had, "resolved treating this." Dr. Koval also referred to the fact that he wrote in the next sentence that Appellant should, "[e]xpect periodic pain flare." (Dr. Koval Depo. Tr., pp. 47-48.)
 {¶ 22} Appellee's counsel and claims adjusters indicated that they expected the jury to discredit Appellant's testimony based on the lack of objective signs of injury. Appellee's counsel and adjusters chose to proceed on the basis that the jury would not believe Appellant or her doctors even though there was no evidence to the contrary. Again, they relied on the low-impact nature of the accident, Appellant's lack of injury at the scene, the fact that she had a three and one-half month gap in her treatment, and her doctors' inability to pinpoint the medical explanation for her complaints.
 {¶ 23} Notwithstanding the foregoing, there was no evidence tending to indicate that Appellant was either dishonest or a malingerer. In fact, Ward stated that there were no real credibility issues with Appellant, and she was described by Appellee's counsel after her deposition as "forthcoming". Thereafter, however, Appellee's counsel said he questioned her candor based on her claimed inability to perform recreational activities, including kick boxing, in spite of the fact that she was still able to marry and conceive a child. (Hearing Tr., pp. 92, 96-97, 227-228, Plaintiff's Exh. 34.)
 {¶ 24} Further, Ward acknowledged at the prejudgment interest hearing that injuries can and do occur as a result of low-impact accidents and that often times an injured party does not seek treatment until the day after a motor vehicle accident. Finally, Ward also acknowledged that the only real evidence as to the permanency of Appellant's injuries was in her favor. (Hearing Tr., pp. 94, 115.)
 {¶ 25} It should also be noted that Baechle's notes reflect that Ward wanted to negotiate payment of the prejudgment interest following trial, indicating, "SINCE IT CAN BE UP TO $40K, HE SUGGEST[S] WE EACH PAY UP TO $20K, TO SAVE AN EXPOSURE OF ANOTHER $40K." (Plaintiff's Exh. 1.)
 {¶ 26} In Miller v. Vanfleet, this Court upheld the trial court's denial of prejudgment interest in spite of the fact that the defendant's last offer before trial did not exceed the plaintiff's claimed medical expenses. The decision in Miller
was upheld because, as the majority opinion concluded,
 {¶ 27} "given our standard of review, the credibility issues of this accident causing Miller's injuries, the alleged severity of the injury in light of the minimal damage to the vehicles, and whether or not the injuries were permanent in nature, it cannot be said that the trial court abused its discretion in finding that a settlement offer of $5,000 was a rational evaluation of the risks and potential liability." Id. at ¶ 14.
 {¶ 28} The Miller holding was in spite of the fact that the plaintiff's medical expenses were approximately $13,000 in addition to his $1,156.40 in lost wages. The defendant's insurance carrier relied on the fact that Miller had denied any injury at the scene and the jury subsequently awarded plaintiff $12,200.29 in damages. Id.
 {¶ 29} However, the dissent in Miller, supra, expressed the opinion that a good-faith effort to settle a case demands a figure capable of an objective evaluation and that the facts inMiller lacked objectivity. The dissent took issue with the insurance adjuster's subjective evaluation of the plaintiff's credibility based on the minimal damage to the vehicles. The dissent also stressed that the plaintiff was only 20 years old at the time of the accident and that he did not have any pre-existing medical conditions. Id. at ¶ 25-26. It further focused on the adjuster's early decision in the case to discount the plaintiff's medical expenses and, "to make an unfairly low take it or leave it offer or let the matter go to trial." Id. at ¶ 27. It was also revealed that the adjuster had evaluated the claim at a higher value, but never increased the original offer of $2,500 until trial. Id. at ¶ 29. Accordingly, the dissent felt that the defendants did not rationally evaluate its risks and failed to make a good faith effort to settle the matter.
 {¶ 30} In Andrews v. Ruozzo, 7th Dist. No. 99 CA 265, this Court upheld the trial court's denial of prejudgment interest and found that rational reasons existed for challenging the plaintiff's claim. Specifically, this Court noted that there was minimal damage to the vehicles involved in the accident and that an elderly passenger in the plaintiff's car was uninjured. Thus, the defendant's $2,000 offer to settle even though the plaintiff incurred medical expenses in the amount of $5,690 was deemed a good faith effort to settle the matter in light of the guidelines set forth in Kalain, supra. Id.
 {¶ 31} However, the dissenting opinion in Andrews stated that the clear liability nature of the case coupled with the fact that the jury returned a verdict more than seven times the best settlement offer warranted a reversal. The dissent also stressed the fact that the defendant's best settlement offer was only 35% of the plaintiff's medical expenses. Id. at 3.
 {¶ 32} Based on the majority opinions in Miller andAndrews, supra, the trial court's decision in this case was well within its discretion. Appellee relied on the minimal impact and Appellant's lack of objective injury. Further, and unlike the facts in Miller and Andrews, supra, Appellee also relied on Appellant's three and one-half month gap in treatment in evaluating settlement. Thus, while some evidence exists on which the trial court could have come to the opposite conclusion, the record does support the trial court's decision that Appellee rationally evaluated his risks and potential liability. We cannot say this decision constitutes an abuse of discretion.
 {¶ 33} As to whether Appellee made a good faith offer to settle the case, the record reveals that Appellant's initial demand to settle the case was $75,000. Appellee's adjuster initially offered $3,800 to settle. Again, Appellee relates that this was based in part on Appellant's initial course of treatment, before the several month lapse. Appellee eventually increased his offer to settle to $5,000 at the final pretrial in spite of Appellant's approximate total of $9,000 in medical bills. Appellant had two of her physicians testify by way of videotape in advance of trial. Both related her injuries to the accident. Appellee's final offer on the morning of trial was $9,000. Appellant rejected this offer and never moved from her $75,000 demand. The case went to trial, and the jury returned a verdict in Appellant's favor for $103,823, which was more than ten times Appellee's final offer.
 {¶ 34} Appellee's settlement tactics and offers to settle do not necessarily reflect the best efforts to resolve the case in light of the clear liability and the lack of evidence contrary to Appellant's injuries. However, the trial court's decision was not an abuse of discretion reflecting a, "perversity of will".Miller v. VanFleet, 7th Dist. No. 03 MA 200, 2004-Ohio-7214, ¶ 8. Given this Court's standard of review, the trial court's decision that Appellee made a good faith effort to settle this case was not unreasonable or unconscionable.
 {¶ 35} As such, Appellant's assignments of error lack merit, and the trial court's decision is hereby affirmed in full.
Donofrio, P.J., dissents; see dissenting opinion DeGenaro, J., concurs.