BLACK ET AL., APPELLEES, *v.* BELL ET AL; BELL, APPELLANT.

(No. 48115—Decided
November 13, 1984.)

*Lawrence M. Kaigler,* for appellees John A. Black et al.

*Foster J. Fludine,* for appellant Gwendolyn Bell.

MARKUS, P.J. Following jury verdicts for the plaintiff driver and the plaintiff passenger on their respective personal injury claims, they sought prejudgment interest pursuant to R.C. 1343.03(C). The jury's verdict found damages for the driver at $87,200 and for the passenger at $30,000. The court conducted an evidentiary hearing on plaintiffs' motion and ordered that they were "entitled to interest from the date of the accident." Defendant appeals, arguing (1) the evidence does not support the findings necessary for that prejudgment interest order, and (2) the statute authorizing prejudgment interest violates the state and federal Constitutions. We agree with the first defense contention, so we modify the judgment to strike prejudgment interest.

I

The same lawyer represented both plaintiffs at the trial of their joint lawsuit and at the post-trial interest hearing. He called three witnesses to support plaintiffs' claim for interest: the defendant's lawyer, the defendant's insurer's claims representative, and the defendant's insurer's claims manager. They identified three exhibits: two of the defendant's insurer's internal memos which described pretrial negotiations and the insurer's litigation worksheet. The defense examined the same witnesses and offered no additional evidence. Together with the court's file, the evidence presents an essentially uncontradicted version of the negotiation history for these two claims.

On December 28, 1981, defendant's car crossed the center line of the roadway and collided with the car carrying the two plaintiffs in the opposite direction. Defendant claimed that her car slid on a patch of ice concealed by snow, causing her to lose control. Following the collision between those two cars, a third car which had been traveling behind the plaintiffs' car struck it in the rear. The plaintiff driver and the plaintiff passenger each claimed multiple injuries from these collisions. The driver's complaint alleged a fractured vertebra, a laceration of her scalp, and contusions of her left ribs, left elbow, right flank, and right leg. The passenger alleged five cracked ribs and "a severely bruised lung," together with aggravation of his recovery from recent surgery.

Plaintiffs initially filed suit against this defendant alone on February 8, 1982. This defendant then joined the driver of the third car to assert a contribution claim for any damages which plaintiffs might recover from this defendant. Thereafter, the plaintiffs added the driver of the third car as an additional defendant on their personal injury claims. The third driver asserted claims against this defendant for contribution of any damages she might owe the plaintiffs and for her own injuries.

The parties' discovery efforts included the defendant's depositions of the two plaintiffs, the third driver's deposition of another witness, and plaintiffs' interrogatories to the defendant. The court conducted pretrials on August 23, 1982; December 15, 1982; January 7, 1983; and February 10, 1983. At its first pretrial, the court ordered plaintiffs to provide defense counsel with all medical reports and bills available and authorized defense medical examinations. The court continued its second pretrial for thirty days so the parties could supply

their "final medical reports." It continued its third pretrial for thirty days "for negotiations." At its fourth pretrial, the court scheduled the trial for July 11, 1983, but the trial actually occurred before a replacement judge in November 1983.

## II

Plaintiffs sought to show their own good faith settlement efforts without calling any witnesses who participated in them on plaintiffs' behalf. The uncontradicted testimony by defendant's counsel reported that plaintiffs' joint counsel consistently proposed settling the driver's case for $80,000 and the passenger's case for $50,000. The two lawyers discussed the cases many times. Plaintiffs' counsel insisted that the two cases must be settled together, and neither could be settled unless both were settled. The defense advised plaintiffs' counsel in early negotiations that the limits of liability on defendant's insurance were $50,000 per person injured and $100,000 per accident. Any payment by defendant's insurer to settle any other claims from that accident would reduce the total available to pay the plaintiffs.

There was no evidence that the defendant had any resources beyond her liability insurance from which plaintiffs might effect their recovery. Three days before the trial, plaintiffs' counsel proposed settlement of the two plaintiffs' cases for a total of $100,000 with no apportionment between the cases. A few weeks earlier, defense counsel concluded independent negotiations to settle injury claims by the third driver and a child in that car for $2,500. Apparently this separate settlement remained confidential until the third driver's claim was formally dismissed five days before the trial.

There was no direct evidence about any investigation or evaluation efforts by the two plaintiffs or their counsel.

Defense counsel acknowledged receiving certain materials from plaintiffs' counsel which related to the valuation of the two claims. Plaintiffs' counsel gave him an uncorroborated list of the driver's claimed medical bills ($7,500), alleged wage loss ($12,540), and asserted "transportation expense" ($250), which totalled $20,290. Apparently plaintiffs' counsel provided a comparable uncorroborated list of claimed medical expenses for the plaintiff passenger which totalled $4,302. He also supplied a report from the passenger's treating physician, other unspecified "medical records and reports," and "authorizations" to obtain the plaintiffs' hospital records.

## III

Defense counsel and the insurer's two claims officers detailed the defense settlement efforts. From their investigation and the plaintiffs' deposition testimony, the defense anticipated two possible arguments to avoid or mitigate the defendant's liability. First, they believed the evidence could support a finding that the defendant lost control in a sudden emergency for which she was not accountable. The trial judge submitted that issue for the jury's determination, so the defense had some reason to consider that factor in settlement activities.

Second, plaintiffs reportedly testified that the third car struck significantly after the initial collision, so the defense anticipated some contribution from the third driver. The policy limits on the third driver's insurance were $12,500 per person injured and $25,000 per accident. There was no evidence that the third driver had any collectible resources beyond that liability insurance. The third driver's insurer made no offer to contribute to a settlement or to settle independently. Defendant's hope for contribution was ultimately defeated when the jury's verdict denied any liability by the third driver.

With regard to the damage aspects of these claims, defense counsel took the plaintiffs' depositions, obtained their hospital records, and arranged for independent medical examinations. He did not seek or obtain corroboration of the claimed medical expenses beyond the hospital bills. He considered some medical expenses unrelated and the driver's claimed wage loss unjustified or greatly inflated, but he made no further investigation of those claims. Instead, he relied on information from the depositions and medical reports to form his judgments about those claimed damages.

According to defendant's counsel, the defense medical examination corroborated the report and later testimony by the passenger's treating physician which denied any permanent damage. Without explanation, defense counsel testified that "by the wildest stretch of the imagination" he anticipated no verdict for the driver above insurance limits ($50,000).

At the first three pretrials, the defense made no settlement offers, purportedly because they had not yet gathered sufficient data or evaluated it. At the pretrial on February 10, 1983, the defense advised the pretrial judge they would pay $15,000 for the two plaintiffs' cases. The record does not disclose whether the judge communicated that offer to the plaintiffs' lawyer. On February 23, 1983, the claims manager reevaluated the cases arising from this accident and allotted $35,000 for all such claims. Shortly before the trial, the claims manager authorized defendant's counsel to pay $30,000 for the settlement of both plaintiffs' cases. On the day of trial, defense counsel told the new judge that he could pay $25,000. The record does not indicate whether the judge so advised plaintiffs' counsel.

IV

Defendant's first assigned error challenges the sufficiency of evidence for the court's order allowing prejudgment interest. The statutory authority for such an order became effective on July 5, 1982. Previously, R.C. 1343.03 allowed prejudgment interest for obligations on "any bond, bill, note, or other instrument of writing, upon any book account, or settlement between parties, [and] upon all verbal contracts entered into * * *."

By the recent amendment, R.C. 1343.03(C) allows recovery for prejudgment interest at the statutory rate on tort claims in limited circumstances:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

Some earlier authority described the award of prejudgment interest as a matter for the trial court's discretion. None of those cases construed or applied the language in R.C. 1343.03(C). The new code section permits the trial court to allow prejudgment interest in tort cases only if the court makes a specific factual determination at a hearing subsequent to the verdict. Before allowing such prejudgment interest, the court must find (a) "that the party required to pay the money failed to make a good faith effort to settle the case," and (b) "that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." In this case, the trial court made such conclusory findings in the challenged order:

"The Court finds that liability in this case was clear or at least, a close question, that Plaintiff's attorney attempted to negotiate settlement prior to trial and that defendant, Gwendolyn Bell's attorney failed to make any offer to settle to plaintiffs prior to trial. Therefore, the Court concludes that the defendant failed to make a good faith effort to settle the case while the plaintiff did not fail to make a good faith effort to settle the case and that plaintiff is entitled to interest from the date of the accident — December 28, 1981."

The trial court has no greater discretion on this subject than it has in reaching a nonjury verdict involving factual issues. However, this court should not reject the trial court's factual determinations where they are supported by some competent credible evidence. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus. We are guided by a presumption that the findings of the trier of fact were correct. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77; *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167, 169.

R.C. 1343.03(C) requires the party seeking prejudgment interest to demonstrate its aggressive prejudgment settlement efforts and its adversary's lack of aggressive prejudgment settlement efforts. The failure to make a good faith effort is not equivalent to bad faith conduct. A party's inactivity can constitute a failure to make good faith efforts without demonstrating bad faith.

For settlement purposes, good faith efforts include the following: (a) an affirmative effort to gather relevant data, (b) an affirmative effort to disclose relevant data to the adversary, (c) an affirmative effort to evaluate that party's litigation risks and prospects reasonably, and (d) an affirmative effort to propose settlement consistent with that reasonable evaluation.

The statute affords no remedy, nor does it deny a remedy, because one or both parties predict or fail to predict the ultimate verdict accurately. If the legislature intended to allow prejudgment interest whenever the verdict exceeded or approximated the plaintiff's settlement offer, the statute would so state. At most, the proximity of one party's settlement offer to the ultimate verdict is conceivably some circumstantial evidence of the reasonableness of that party's evaluation. It falls far short of demonstrating that such party made a good faith effort to settle or that the adverse party failed to do so. Evidence at a trial may differ markedly from reasonably anticipatable evidence at any stage of negotiations, just as anticipatable evidence may have varied earlier.

Fortuitous foresight does not demonstrate good faith settlement efforts. Nor does poor predictive ability necessarily establish a failure to make such efforts. Thus, plaintiffs did not show their own good faith efforts by evidence that they proposed a joint settlement of $100,000 and the verdict was higher. In fact, the evidence shows an aggregate collectible verdict of $80,000 ($50,000 for the driver plus $30,000 for the passenger). Nor does plaintiff show defendant's lack of good faith efforts by evidence that the verdicts aggregated $117,200 after the defense offered only $25,000.

In this case, there was little or no evidence about plaintiffs' counsel's efforts to gather relevant data beyond the materials he supplied to defense counsel. Likewise, there was little or no evidence about plaintiffs' efforts to evaluate any litigation risks or prospects, beyond the bare unexplained settlement numbers.

Similarly, the evidence offered to show the defendant's failure to make good faith settlement efforts was extremely weak. Defense counsel did discount the driver's claimed wage loss without any demonstrated independent

investigation. Otherwise, defense counsel apparently gathered and considered most data typically used for valuation purposes, according to his uncontradicted testimony. Defendant's settlement offers were close to their valuations. They communicated them to the court with no reported expectation of confidentiality, when the court undertook to act as an intermediary. Absent reason to believe the court would not or did not communicate settlement offers, the parties communicate in good faith by advising the court.

Thus, the defense's principal error was presumably its failure to evaluate the claims accurately. The three persons involved in those defense valuations were each shown to be highly experienced in that field. No witness testified that the defense valued the claims unreasonably, and the sketchy evidence here does not sufficiently support that conclusion. The ultimate verdicts do not show unreasonable pretrial valuations without some evidence that the trial testimony was reasonably anticipatable earlier.

This court has twice rejected findings which allowed prejudgment interest under R.C. 1343.03(C). *Hardiman* v. *Zep Mfg. Co.* (1984), 14 Ohio App. 3d 222; and *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3. In each of those cases, the plaintiff recovered a substantial verdict after the defense made no settlement offer. In *Hardiman,* the plaintiff asked $750,000, the defense made no offer, and the verdict was $250,000. In *Ware,* the plaintiff asked $6,000, the defense made no offer, and the verdict was $137,000. By contrast, this court affirmed one prejudgment interest order in a tort case, when the verdict fell between the last demand and offer. *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336. In *Cox,* the plaintiff finally asked $10,000, the defendant offered $2,000, and the verdict was $5,395.

In this case, our disagreement with the necessary findings for prejudgment interest under R.C. 1343.03(C) is heightened by plaintiffs' counsel's insistence on a joint settlement. Counsel representing multiple parties should seldom, if ever, condition settlement with one client on negotiations with another. Cf. DR 5-105(B) and 5-106(A) of the Code of Professional Responsibility. Insistence on a "package settlement" obstructs good faith settlement negotiations on any claim individually. It also confuses any determination whether individual plaintiffs made good faith settlement efforts or whether the defense failed to do so for individual claims.

Anyone who requires joint settlement for multiple unrelated parties presumably fails to make good faith negotiation efforts. Inability to agree on settlement of any single claim would then preclude settlement of all consolidated claims. Uncontradicted testimony by the defense counsel here asserts that plaintiffs' counsel imposed that condition, so the defense responded in a like manner.

In its totality, the evidence at the hearing on plaintiffs' motion for prejudgment interest requires the denial of that claim. Defendant's first assigned error has merit, so we modify the trial court's judgment by striking the award of prejudgment interest.

V

Defendant's second assignment of error challenges the constitutionality of R.C. 1343.03(C). This court has already rejected the contention that R.C. 1343.03(C) contravenes the constitutional provisions relied upon by defendant. *Hardiman* v. *Zep Mfg. Co., supra,* at 227-228.

Defendant's second assigned error lacks merit. Since defendant does not challenge the underlying judgments, the judgments for the plaintiffs are affirmed

without the award for prejudgment interest.

*Judgment modified and affirmed.*

PRYATEL, J., concurs.

NAHRA, J., dissents.

NAHRA, J., dissenting. I respectfully dissent. It is clear from the record that defense counsel failed to respond to plaintiffs' counsel's efforts to meet and discuss settlement of these claims until three days prior to trial. At that time, plaintiffs' counsel indicated that he could settle for $100,000. Defense counsel responded that the claims were not worth $100,000. When asked what they were worth, defense counsel stated that in view of plaintiffs' demand, he could not make any offer. J.C. Penney Casualty Insurance Company had previously given defense counsel $30,000 settlement authority *to allocate between the cases at his discretion.*

Based upon this record, the trial judge had sufficient facts from which to find that the defense did not make a good faith effort to settle the cases, and I would not disturb that finding. In addition, although plaintiffs' counsel did not testify, there was ample evidence presented by the defense witnesses from which the trial court could conclude that plaintiffs did not fail to make a good faith effort to settle.

I agree with the majority that claims should be negotiated separately and that special damages should be verified if disputed. However, I do not believe that these matters were an impediment to good faith settlement negotiations in these cases. Since the finding of the trial court was supported by some competent credible evidence, *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], I would affirm.