DECISION AND JUDGMENT ENTRY
Appellant Sharon Duke, D.O. appeals the Washington County Court of Common Pleas' order granting prejudgment interest to appellees Linda Wagner and Debra Lauer. She assigns the following error:
 THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PLAINTIFFS PREJUDGMENT INTEREST WHERE DR. DUKE PRESENTED AN OBJECTIVELY REASONABLE BASIS FOR DECLINING TO SETTLE THE CASE.
Finding no merit in the assigned error, we affirm the trial court's judgment. However, we remand this case to the trial court for purposes of re-computing the amount of interest owed.
Appellees filed a medical malpractice claim against Dr. Duke arising from the death of their father, Ronnie Wagner. At trial, the jury found that appellees had suffered damages in the amount of $358,955.36. However, the jury attributed contributory negligence to Mr. Wagner, reducing the verdict amount by 25% to $269,216.52. Appellees then filed a timely motion for prejudgment interest. Following a hearing, the court granted this motion and awarded appellees interest at the statutory rate of 10% per annum, calculated from the date appellees' cause of action accrued to the date on which the judgment was paid. This amounted to $76,278.01 in prejudgment interest. Dr. Duke filed a timely appeal from this entry.
R.C. 1343.03(C)(1) provides:
 [I]nterest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties shall be computed from the date the plaintiff gave the defendant written notice in person or by certified mail that the cause of action accrued until the date that the judgment, decree, or order for the payment of money is rendered or from the date the plaintiff filed a complaint to commence the civil action until the date that the judgment, decree, or order for the payment of the money is rendered, whichever time period is longer, if, upon motion of any party to the civil action, the court determines at a hearing held subsequent to the verdict or decision in the civil action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
This statute was enacted to promote settlement efforts, prevent parties who engage in tortious conduct from frivolously delaying the ultimate resolution of cases, and encourage good faith efforts to settle controversies outside a trial setting. Kalain v. Smith (1986),25 Ohio St.3d 157, 159.
A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if she has (1) fully cooperated in discovery proceedings, (2) rationally evaluated her risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that she has no liability, she need not make a monetary settlement offer. Kalain, supra, at syllabus. A party may have "failed to make a good faith effort to settle" even when she has not acted in bad faith. Id. at 159, citing Mills v. Dayton (1985), 21 Ohio App.3d 208.
The party seeking prejudgment interest bears the burden of proof.Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 658. The determination to award prejudgment interest rests within the trial court's sound discretion. Scioto Mem. Hosp. Assn., Inc. v. PriceWaterhouse (1996), 74 Ohio St.3d 474, 479. Absent a clear abuse of discretion, the trial court's finding on the issue will not be reversed.Kalain, supra, at 159. Abuse of discretion is an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable.Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87. An abuse of discretion involves far more than a difference in opinion. "In order to have an `abuse' in reaching a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Id.
Neither party disputes that Dr. Duke cooperated in discovery proceedings and did not attempt to delay the proceedings. Rather, the parties disagree on whether Dr. Duke rationally evaluated the risks and potential for liability and possessed a good faith, objectively reasonable belief that she had no liability. Appellants also contend that evidence that medical experts reviewed the defense case but were not retained is irrelevant to the analysis of whether prejudgment interest should be awarded and such information is privileged. We address this issue first to determine whether the trial court properly considered that evidence in making its determination.
In Moskovitz, supra, the Supreme Court of Ohio addressed the issue of discovery of privileged documents as it relates to claims for prejudgment interest. The Court held that "neither the attorney-client privilege nor the so-called work product exception precludes discovery of the contents of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." Id.
at paragraph three of the syllabus. The Court, relying on Peyko v.Frederick (1986), 25 Ohio St.3d 164, paragraph two of the syllabus, held that the trial court shall determine by in camera inspection which portions of the file, if any, are privileged. Id. at 660. Further, the general discovery process established by the Civil Rules applies to the post-trial proceeding for prejudgment interest. Id. The Court also noted that, on occasion, this rule might apply to the file of a party's attorney. Id. at 662-663.
It is settled that a trial court has broad discretion in controlling the discovery process. Feichtner v. Cleveland (1994), 95 Ohio App.3d 388, citing Stegawski v. Cleveland Anesthesia Group, Inc. (1987),37 Ohio App.3d 78. Absent an abuse of discretion, we must not reverse a trial court's ruling on discovery matters. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147; In re Bailey (Sept. 8, 1994), Washington App. No. 93CA32, unreported. Regulation of pre-trial discovery matters concerning privilege is also governed by an abuse of discretion standard. See Kalb v. Morehead (May 19, 1998), Scioto App. No. 97CA2499, unreported; In re Grand Jury (June 1, 1995), Washington App. Nos. 93CA9, 93CA10, and 93CA12, unreported. Likewise, we apply it here in the post-trial context.
Appellant contends that the court erred in allowing discovery of documents and testimony indicating that defense counsel recommended retaining a certain expert, the expert reviewed the medical records, and the expert indicated that he did not feel he could support appellant's case. Appellant maintains that this testimony is irrelevant because trial counsel, Jeffrey Beausay, testified that the expert witness did not conclusively disagree with appellant's care; he simply he did not make the best defense witness.
Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We agree with appellees that the unwillingness of an expert contacted by appellant's attorney to support her defense is relevant to whether or not her decision to refuse settlement was reasonable. Attorney Beausay's testimony that the expert witness did not necessarily disagree with appellant's standard of care goes to the weight which the trial court places on this information but does not make it irrelevant.
Next, we must determine whether this information was privileged such that it should not have been disclosed during discovery. In Radovanic v.Cossler (Oct. 19, 2000), Cuyahoga App. No. 77586, unreported, the Eighth District Court of Appeals addressed a similar issue. The trial court inRadovanic, after conducting an in camera inspection and redacting portions of the file, ordered the production of various defense documents including evaluations by physicians, analyses of the credibility of witnesses, and comments regarding the defense's likelihood of success on the merits. The appellate court held that these documents do not go directly to the defense theory of the case and are the type of documents needed to indicate whether or not prejudgment interest was warranted. The court of appeals further held that the trial court properly exercised its discretion in determining whether sections of the file were discoverable under Peyko and Moskovitz and did not abuse that discretion.
Similarly, the trial court here reviewed the contested documents incamera and redacted portions of the file which it believed pertained to the defense theory. We agree with appellees that the fact that a defense expert witness does not agree with the defense's case is not part of the theory of the case. Therefore, the trial court did not abuse its discretion in allowing discovery of this information under Moskovitz,supra.
We now turn to the question of whether the trial court abused its discretion in deciding that Dr. Duke did not rationally evaluate the risks and potential for liability and did not possess a good faith, objectively reasonable belief that she had no liability.
Attorney Beausay and Andrew Hollern, the insurance company's claims specialist, testified that they consistently recommended that Dr. Duke agree to settle the case before trial. However, absent Dr. Duke's consent, the insurance company was unable to do so. Attorney Beausay testified that his analysis of Dr. Duke's likelihood of success ranged between twenty-five and fifty percent. Following the deposition of appellees' expert witness, Dr. Braen, Attorney Beausay asked appellees' counsel for a settlement demand. He testified that he made this request because he thought Dr. Braen was an excellent witness and believed Dr. Duke should agree to settle. Appellees' counsel offered to settle the case for $650,000 and included in his request information regarding Mr. Wagner's family history of heart disease, work experience, family life and a summary of the testimony of appellees' expert witnesses. The offer also indicated that appellees were willing to negotiate. Dr. Duke refused to settle and testified that she did so because her expert witnesses had not yet been deposed.
Dr. Duke sent a fax to Attorney Beausay in April 1999 indicating that she was not willing to settle. She further stated that appellees needed to drop their suit or she would go to trial. Dr. Duke provided no reasons for this position and did not indicate that she would reconsider settlement in the future. Attorney Beausay notified the court and appellees' counsel that Dr. Duke was not willing to settle at that point and he believed the scheduled settlement conference would be fruitless. Consequently, the settlement conference was cancelled.
Following the depositions of Dr. Duke's expert witnesses, Attorney Beausay began to feel that Dr. Duke had a stronger case. Further, shortly before trial, Attorney Beausay learned that the cardiac index, an important piece of evidence that was harmful to the defense, was inaccurate. This further strengthened Attorney Beausay's confidence in the defense case. Attorney Beausay also believed that if the jury found Dr. Duke to be negligent, it would assess Mr. Wagner's contributory negligence at fifty percent. These opinions were conveyed to Dr. Duke.
Both Mr. Hollern and Attorney Beausay believe Dr. Duke's decision not to settle was reasonably justified based on the evidence. Dr. Duke testified that she read all of the depositions taken in this matter and believed that she had done nothing wrong, though appellees' expert witnesses disagreed with this position. She relied on her personal review of the evidence as well as her attorney's recommendations in deciding not to authorize settlement. Dr. Duke also testified that she never indicated that she would not settle under any circumstances.
In reaching its decision to award prejudgment interest, the trial court considered several factors. The court noted that Dr. Duke was consistently advised to settle but refused, that Dr. Duke's two sentence fax indicated that she would not settle but cited no reasons in support of her decision, and that Attorney Beausay testified that Dr. Duke always felt that she had done nothing wrong. The court cited correspondence received by Dr. Duke prior to trial recommending that she settle and a letter indicating that an expert sought by defense counsel was hesitant to testify on her behalf. The court noted that the cardiac index was clearly refuted immediately before trial but, according to Dr. Duke's testimony, she had disregarded that evidence from the very beginning. The court acknowledged that Attorney Beausay considered this a damaging piece of evidence, but it was clear that this piece of evidence was not the sole reason for recommending settlement in his correspondence.
We are mindful that a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge "* * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony." In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Appellant contends that the trial court erroneously placed great emphasis on the documentary evidence but ignored her testimony as well as that of Mr. Hollern and Attorney Beausay. Clearly, the trial judge considered these witnesses' testimony when reaching his decision as he refers to their testimony at various points in his decision. More importantly, however, the court, as factfinder, was free to place more weight in documents that were generated at the time of the events than in the testimony of the witnesses made in hindsight.
Appellant also argues that the fact that the jury verdict was closer to zero than to appellees' demand should be weighed in her favor. The fact that a jury verdict is or is not close to settlement figures is relevant to the reasonableness of a party's evaluation of the case. However, as noted in Black v. Bell (1984), 20 Ohio App.3d 84:
 The statute affords no remedy, nor does it deny a remedy, because one or both parties predict or fail to predict the ultimate verdict accurately. * * * At most, the proximity of one party's settlement offer to the ultimate verdict is conceivably some circumstantial evidence of the reasonableness of that party's evaluation. It falls far short of demonstrating that such party made a good faith effort to settle or that the adverse party failed to do so. * * *
Id. at 88. Moreover, when appellees made their demand, they clearly indicated that they were ready and willing to negotiate. Had such a negotiation occurred, it is possible that the settlement would have been closer to the actual verdict rendered by the jury.
In Moskovitz, supra, the Ohio Supreme Court noted that the "good faith, objectionably reasonable belief" language of Kalain, supra, must be "strictly construed so as to carry out the purposes of R.C. 1343.03."69 Ohio St.3d at 659. Prejudgment interest "acts as compensation and serves ultimately to make the aggrieved party whole." Royal Elec.Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, 117. Prejudgment interest is to compensate the plaintiffs for the period of time between the accrual of the claim and the judgment. Id. It is not intended to punish a losing defendant.
In Galayda v. Lake Hospital Systems, Inc. (1994), 71 Ohio St.3d 421,429, the Supreme Court of Ohio held that:
 A trial court does not abuse its discretion in awarding prejudgment interest when, as here, a defendant "just says no" despite a plaintiff's presentation of credible medical evidence that the defendant physician fell short of the standard of professional care required of him, when it is clear that the plaintiff has suffered injuries, and when the causation of those injuries is arguably attributable to the defendant's conduct. We find the trial court's determinations on this issue wholly in accord with the purposes of R.C. 1343.03 and with the standards set forth in Kalain and Moskovitz, supra.
Here, the trial court was faced with the same situation. Mr. Wagner clearly suffered injuries, plaintiffs' counsel presented credible expert witnesses who believed that Dr. Duke did not provide the appropriate care, and the injuries, at least arguably, could be attributed to Dr. Duke's actions. Despite at least some evidence that she was liable, Dr. Duke refused to offer even a minimal amount to settle.
In assessing the risk of any occurrence, including the potential of civil liability, it would seem reasonable that one must evaluate both the likelihood of the event occurring, i.e. its probability, and its impact if it should happen, i.e. its magnitude. Events that have a low probability of occurring, yet will be accompanied by an impact of great magnitude if they do happen, should properly be treated differently than those where the probability and the magnitude of the event are both low. Likewise, high probability and low impact may require a different approach. A rational approach considers both factors. Here it appears that at best, appellant considered only the probability of liability and not its magnitude. Moreover, appellees make a strong argument that appellant did not even approach the liability issue rationally. If a party has not rationally evaluated her risks and potential liability, she cannot be said to have a good faith, objectively reasonable belief that she has no liability. See Urban v. Goodyear Tire Rubber Co. (Dec. 7, 2000), Cuyahoga App. No. 77162, unreported. The trial court's findings of facts support such a conclusion. Therefore, the determination that appellant did not rationally evaluate her risks and liabilities or have a good faith, objectively reasonable belief that she had no liability is not an abuse of discretion. The court did not err in awarding appellees prejudgment interest.
However, we do find that the court erred in awarding prejudgment interest "from the date the cause of action accrued to the date on which the judgment is paid." Under the current version of R.C. 1343.03(C)(1), which has been in effect since January 27, 1997, prejudgment interest must be computed from the date the plaintiff gave the defendant written notice of the cause of action or filed the complaint until the date the judgment is rendered. Apparently, the court relied upon the prior version of R.C. 1343.03(C) which allowed prejudgment interest from the date the cause of action accrued to the date the money was paid.
Although appellant did not raise this error on appeal, we find that the trial court committed plain error in awarding damages under the incorrect statute. The plain error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant. State v. Eiding (1978),57 Ohio App.2d 111. Although the plain error doctrine is a principle applied almost exclusively in criminal cases, the doctrine may also be applied in civil causes if the error complained of "would have a material adverse affect [sic] on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,209. We believe this is such a case.
Therefore, we affirm the trial court's award of prejudgment interest but remand this matter to the trial court for purposes of re-computing the amount of interest owed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED AND REMANDED IN PART and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion
 ________________________ William H. Harsha, Judge