OPINION
Defendants, Roger S. Ruben, D.O. and T.C. Hobbs Associates, Inc. ("T.C. Hobbs"), appeal the judgment of the Franklin County Court of Common Pleas granting plaintiff Jeni Diane Smith's motion for prejudgment interest and denying defendants' motion for a $10,000 setoff from the jury's verdict.
On May 13, 1998, plaintiff filed an amended medical malpractice action against Dr. Ruben, his employer, T.C. Hobbs, and Doctors Hospital ("Doctors"),[1] resulting from defendants' alleged failure to diagnose a bronchogenic cyst revealed during the performance of an esophagram on April 4, 1994. Plaintiff alleged that as a proximate result of defendants' failure to timely diagnose the bronchogenic cyst, plaintiff incurred significant medical expenses when the cyst had to be surgically removed on December 10, 1996. Plaintiff further alleged that the lengthy delay in diagnosis and treatment caused her to suffer pain, emotional distress, loss of employment and impairment of earning capacity. Trial was set for May 3, 2000, but was subsequently continued to May 15, 2000. On May 17, 2000, the jury returned a $50,000 verdict for plaintiff. Upon plaintiff's post-trial motion, the trial court awarded costs to plaintiff in the amount of $1,399.25. Neither plaintiff nor defendants filed an appeal from this judgment.
On May 18, 2000, plaintiff filed a timely motion for prejudgment interest. Under this motion, plaintiff argued that defendants had failed to make a good faith effort to settle the case before it went to trial. Plaintiff first alleged that defendants failed to cooperate in discovery, in that defendants failed to respond to interrogatories served with plaintiff's complaint; failed to attend an initial status conference; and failed to identify potential witnesses, expert or otherwise. In support of these contentions, plaintiff submitted copies of letters from plaintiff's counsel to defendants' counsel, dated December 24, 1998, and April 7, 2000, respectively, requesting responses to the discovery requests served with the complaint; a copy of a decision and entry filed by the trial court on August 6, 1998, indicating that defendants did not appear for an initial status conference on July 29, 1998; a copy of plaintiff's February 4, 1999 disclosure of witnesses; and a copy of the trial court's May 12, 2000 decision and entry granting plaintiff's motion in limine.[2]
Plaintiff also argued that defendants failed to rationally assess their risks and potential liability and failed to make a good faith effort to settle the case. Specifically, plaintiff argued that despite: (1) Dr. Ruben's admission in his December 1998 deposition that he incorrectly read the esophagram film; (2) the discovery deposition testimony of plaintiff's medical expert establishing that Dr. Ruben was negligent in failing to detect the bronchogenic cyst in April 1994; (3) Dr. Ruben's failure to identify an expert witness to testify on his behalf; and (4) her continuing efforts to settle the case, defendants failed to engage in settlement negotiations until three weeks before trial. In support of her contentions, plaintiff submitted a copy of a $150,000 settlement demand made by plaintiff's attorney to defendants' insurance carrier on January 27, 1998; a copy of plaintiff's April 7, 2000 letter to defendants noting that she had yet to receive a response to her January 27, 1998 settlement demand and reiterating her willingness to continue negotiations; a copy of plaintiff's June 4, 1999 letter to defendants noting that defendants had yet to make a settlement offer; a copy of plaintiff's April 28, 2000 letter rejecting defendants' $35,000 offer and reducing plaintiff's demand to $120,000; a copy of defendants' May 1, 2000 offer of $45,000; a copy of plaintiff's May 5, 2000 letter reducing her demand to $105,000; a copy of defendants' May 11, 2000 offer of $50,000; and a copy of plaintiff's May 11, 2000 rejection of defendants' $50,000 offer and new demand of $100,000.
Also attached to plaintiff's motion for prejudgment interest was the affidavit of plaintiff's counsel, Tim Van Eman. The affidavit stated in part:
 The expenses incurred in preparing this case for trial exceeded $20,000.00.
 The majority of these expenses were for expert witness and deposition fees relating to Plaintiff's three experts.
 Many if not most of these expenses could have been avoided had Defendants * * * not ignored Plaintiff's settlement demand which was made in January of 1998, and instead entered into timely and reasonable negotiations.
 Defendants * * * did not make any offer in this case until approximately April 26, 2000. Trial took place on May 15, 2000.
 Plaintiff was ready, willing and able at all times throughout this case to negotiate, but was not given an opportunity to do so until less than three weeks before trial, by which time all discovery and trial depositions had been taken.
 Defendants had no witnesses, expert or otherwise, other than Dr. Ruben himself, to support Defendants' position or to rebut Plaintiff's claims.
Defendants filed a response to plaintiff's motion, arguing that they had cooperated in discovery by, inter alia: (1) cooperating in the deposition of Dr. Ruben; (2) providing plaintiff access to the April 1994 esophagram film; (3) agreeing to pay the hourly fee charged by plaintiff's expert witnesses; (4) keeping discovery costs down by taking a telephone, rather than a live, deposition of one of plaintiff's experts in California; and (5) rearranging schedules to accommodate plaintiff's discovery needs.
Defendants further argued that they had rationally evaluated their risks and potential liability. Although defendants conceded that Dr. Ruben's discovery deposition established that he erred in his initial interpretation of the esophagram, defendants maintained that they believed they had no liability because Dr. Ruben's misinterpretation did not necessarily constitute negligence. Defendants also argued that they rationally evaluated plaintiff's allegations of physical injury and determined that, because plaintiff would have had to undergo the same surgery to remove the cyst in 1994 as she had in 1996, no medical injury was caused by defendants' alleged negligence. Defendants further contended that no objective evidence supported plaintiff's claim that she endured physical pain and suffering for the two-year period between the misdiagnosis in 1994 and the surgery in 1996. Defendants further argued that they reasonably evaluated plaintiff's economic loss and determined that plaintiff had made little effort to mitigate her damages and that most, if not all, of plaintiff's economic loss was due to her own personal choices.
Noting that they had never asked for a continuance and that the trial took place pursuant to the trial court's amended schedule, defendants argued that they had not caused a delay in the proceedings.
Finally, defendants argued that they had made a good faith monetary settlement offer of $50,000 in advance of trial, and that, coupled with the $10,000 she had already received from Doctors, plaintiff's total pre-trial settlement package amounted to $60,000. In addition, defendants noted that the jury returned a verdict exactly equal to defendants' settlement offer. Defendants also argued that much of the $20,000 cost plaintiff alleged to have incurred in preparing the case resulted from her choice to utilize expert witnesses from California. Defendants attached no documentation in support of any of the foregoing arguments.
A hearing on the motion was held before a visiting judge of the Franklin County Court of Common Pleas on July 10, 2000.[3] The parties did not attend the hearing and neither submitted, nor attempted to submit, evidentiary materials in support of their positions on the prejudgment interest issue. However, counsel for the parties reiterated the positions set forth in their respective memoranda.
In addition to the prejudgment interest issue, the court heard arguments regarding defendants' oral motion that the $50,000 verdict should be offset by the $10,000 plaintiff received from Doctors pursuant to the settlement agreement. The agreement, entitled "Covenant Not to Sue and To Cease Suing" was executed by plaintiff on January 31, 2000. The arguments as to the setoff issue were set forth in greater detail in separate memoranda of law filed by the parties subsequent to the hearing.
On October 3, 2000, the trial court granted plaintiff's motion for prejudgment interest. The court found defendants' failure to answer interrogatories filed with the complaint, failure to file a witness disclosure statement, failure to identify and disclose expert witnesses and failure to appear at a court ordered settlement conference on October 29, 1999 evidence of defendants' failure to cooperate in discovery. The court reasoned that "[d]efendants failure to engage in these important pre-trial steps ultimately denied Plaintiff the benefit of well informed Defendants who would be more capable of evaluating risks of going to trial and ultimate liability, thereby reducing or elimination [sic] exhaustive and expensive trial preparation for both parties, not to mention saving Court resources and time." (10/3/00 Decision, pg. 2.)
The court further determined that defendants failed to rationally evaluate the risk of proceeding to trial and their potential liability in failing to recognize the cyst, which, according to the court, was "clearly evident on the esophagram." (10/3/00 Decision, pg. 3.) In support of this determination, the court opined that: Dr. Ruben "surely must have reexamined the esophagram * * * shortly after this litigation was begun in May of 1998 and recognized his miss reading [sic] of the film." (10/3/00 Decision, pg. 3.) The court further found that defendants disregarded: (1) Dr. Ruben's December 1998 admission that he misread the esophagram film; (2) the deposition testimony of plaintiff's medical experts, Dr. Kevin Turley and Dr. Ross Benjoya, indicating that the cyst present on the esophagram was obvious and that defendants fell below the standard of care in failing to recognize it; and (3) the deposition testimony of plaintiff's economic expert, Richard Palfin, Ph.D., indicating that plaintiff's economic loss was $45,000.[4]
The court also determined that defendants failed to make a good faith monetary settlement offer or to respond in good faith to plaintiff's offers. The court opined that defendants ignored plaintiff's repeated efforts to discuss settlement options until a few weeks before trial, even after Dr. Ruben impliedly admitted negligence, after plaintiff's experts testified as to Dr. Ruben's negligence, and after defendants failed to identify even one expert or lay witness to counter the "overwhelming evidence" presented by plaintiff. (10/3/00 Decision, pg. 4.) The court further rejected defendants' argument that prejudgment interest should be denied because the verdict was equal to the settlement offer. The court found the argument spurious in light of the fact that defendants made no settlement offer until a few weeks before trial, well after it was "patently clear by reasonable analysis that liability was very likely." (10/3/00 Decision, pg. 4.)
The court then denied defendants' motion for setoff. By entry dated October 19, 2000, the trial court entered judgment for plaintiff in the amount of $51,399.25, together with prejudgment interest in the amount of ten percent per annum from April 4, 1994, to the final payment of the judgment. Defendants have timely appealed the trial court's judgment, assigning three errors for our review:
 I. The Trial Court Failed To Conduct An Evidentiary Hearing As Required by R.C. 1343.03(C)[.]
 II. The Trial Court Abused Its Discretion By Awarding Prejudgment Interest In This Case[.]
 III. The Trial Court Erred By Not Ordering A Set-Off of $10,000 which Plaintiff Received From Co-Defendant Doctors Hospital[.]
By the first assignment of error, defendants argue that the trial court erred in failing to conduct an evidentiary hearing on plaintiff's motion for prejudgment interest as required by R.C. 1343.03(C) and in relying, in part, on "its impressions of the testimony at trial" when the plaintiff failed to introduce the trial transcript into evidence at the hearing. R.C. 1343.03(C) states[5]:
 Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case. (Emphasis added.)
In Galmish v. Cicchini (2000), 90 Ohio St.3d 22, Cicchini argued that the trial court erred in failing to conduct an evidentiary hearing on Galmish's motion for prejudgment interest, and in relying exclusively on the briefs and oral arguments presented by counsel. Cicchini contended that the hearing was not "evidentiary" in the sense that Galmish failed to present evidence of the parties' efforts to settle the case. The court, citing Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, recognized that R.C. 1343.03(C) requires a trial court to conduct a hearing on a motion for prejudgment interest and also requires the party seeking the award "to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle." Id., quoting Moskovitz, at 659. The court further noted that the trial court had indeed held a hearing on Galmish's motion, during which Cicchini "made no attempt, and expressed no desire, to present any evidence, nor did he request a continuance of the hearing in order to do so." Id. at 33. In addition, the court noted that at the hearing, counsel for Galmish set forth the parties' respective settlement efforts. The court found that, although counsel's statements were not evidence of a written offer to settle, they were, under the circumstances of the case, "something equally persuasive" under Moskovitz because the trial court was already aware of the parties' settlement efforts by virtue of the trial court's own attempts to facilitate settlement and because Cicchini's counsel never disputed the accuracy or veracity of Galmish's counsel's representations. Accordingly, the court found that the trial court had committed no error "in relying on oral arguments to ascertain the parties' efforts at settlement." Id. at 34.
In the instant case, as in Galmish, the trial court held a hearing on plaintiff's motion for prejudgment interest. Initially, we note that a review of the hearing transcript reveals that defendants offered no objection to plaintiff's failure to call witnesses or otherwise submit evidence at the hearing and made no attempt, nor expressed any desire, to present their own evidence at the hearing, nor did they request a continuance of the hearing in order to do so.
Moreover, although no evidence was admitted at the hearing, counsel for both plaintiff and defendants were given ample opportunity to argue their positions. Indeed, plaintiff's counsel stated that plaintiff made her initial settlement demand in January 1998, prior to suit being filed and reiterated her willingness to negotiate with defendants over the course of the pretrial proceedings; that defendant admitted in his December 1998 discovery deposition that he misread the esophagram film; that defendant never identified an expert witness to testify on his behalf; and that defendant made no offer in response to plaintiff's demand until three weeks before trial. Pursuant to Galmish, these statements, while not evidence of a written offer to settle, constitute "something equally persuasive" under Moskovitz. Defendants' counsel did not dispute the accuracy or veracity of these representations. Instead, counsel's stated position was that defendants made no effort to settle earlier in the proceedings because "Dr. Ruben did not consent [to settle] until shortly before the offer was made" and because the case "involved facts that created some doubt as it relates to Plaintiff`s damages." (July 10, 2000 hearing, pg. 8.) As in Galmish, we find that the trial court committed no error in relying on oral arguments to ascertain the parties' settlement efforts.
Moreover, we find no error in the trial court's reliance on "its impressions of the testimony at trial" in determining whether the parties' settlement efforts were reasonable. The Galmish court held that in determining the reasonableness of the parties' settlement efforts, a trial court is not limited to the evidence presented at the prejudgment interest hearing. Id. The court explained:
 * * * [A trial court] may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Otherwise, "the hearing required under R.C. 1343.03(C) may amount to nothing less than a retrial of the entire case." Id. at 34, quoting Moskovitz, supra, at 661.[6]
Upon review of the trial court's decision, it is evident that the court considered evidence other than that presented at the prejudgment interest hearing, including the materials attached to plaintiff's motions, the court's prior rulings, portions of trial testimony and other evidence contained in the file. Such consideration is clearly proper under Galmish. Accordingly, we cannot find that the trial court abused its discretion in failing to conduct an "evidentiary" hearing, and in reviewing the evidence presented at trial. Accordingly, the first assignment of error is not well-taken.
By the second assignment of error, defendants contend that the trial court erred in awarding prejudgment interest to plaintiff. It is well-settled that R. C. 1343.03(C) was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting. Kalain v. Smith (1986), 25 Ohio St.3d 157, 159. The statute serves the additional purpose of compensating a plaintiff for a defendant's use of money which rightfully belonged to the plaintiff. Musisca v. Massillon Community Hosp. (1994), 69 Ohio St.3d 673, 676.
In Moskovitz, supra, the Ohio Supreme Court construed R.C. 1343.03(C) as containing the following four components: (1) the party seeking prejudgment interest must petition the court by motion within fourteen days after entry of judgment; (2) the trial court must hold a hearing on the motion; (3) before awarding prejudgment interest, "the court must find that the party required to pay the judgment failed to make a good faith effort to settle"; and (4) "the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case." Id. at 658. "[I]f a party meets the four requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary. What is discretionary with the trial court is the determination of lack of good faith." Id. at 658. Accordingly, an appellate court's task is to determine whether the trial court abused its discretion in determining that defendants failed to make a good faith effort to settle. Id.
The party seeking prejudgment interest bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case. Id. at 659. A lack of a good faith effort to settle is not synonymous with bad faith. In Kalain, supra, syllabus, the court held:
 A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
In Moskovitz, supra, the Ohio Supreme Court placed a caveat on the last sentence by stating that it should be strictly construed as to carry out the purposes of the statute. Id. at 659.
We have reviewed the entire record in this case, including the materials attached to plaintiff's motion and the transcript of proceedings in the prejudgment interest hearing, and find that the trial court was well within its discretion in ordering prejudgment interest pursuant to R.C. 1343.03(C). In our view, a trial court does not abuse its discretion in awarding prejudgment interest, when, as here, defendants failed to comply with plaintiff's requests for discovery, failed to identify and disclose expert witnesses, failed to appear at court ordered proceedings, and waited until the eve of trial to engage in settlement negotiations despite plaintiff's good faith efforts to settle and presentation of credible medical evidence that the defendants fell short of the standard of professional care required, when it was clear that plaintiff suffered injuries, and when the causation of those injuries was arguably attributable to the defendants' conduct.
Moreover, we cannot agree with defendants' contention that the jury's return of a verdict exactly equal to defendants' final settlement offer demonstrated their good faith effort to settle the case. "The mere fact that a jury verdict is or is not close to settlement figures is at best, circumstantial evidence of the reasonableness of a party's evaluation of that case." Hughes v. Brogan (Sept. 26, 1995), Franklin App. No. 95APE02-153, unreported. As stated in Black v. Bell (1984),20 Ohio App.3d 84 :
 The statute [R.C. 1343.03(C)] affords no remedy, nor does it deny a remedy, because one or both parties predict or fail to predict the ultimate verdict accurately. * * * At most, the proximity of one party's settlement offer to the ultimate verdict is conceivably some circumstantial evidence of the reasonableness of that party's evaluation. It falls far short of demonstrating that such party made a good faith effort to settle or that the adverse party failed to do so. * * * [Id. at 88.]
In our view, the evidence relied upon by the trial court in concluding that plaintiff made a good faith effort to resolve the case and that defendants failed to make such an effort clearly outweighs the circumstantial evidence relied upon by defendants regarding the reasonableness of their evaluation of the instant case. As noted in Bell, supra, "[f]ortuitous foresight does not demonstrate good faith settlement efforts." Id. We find the trial court's determination on this issue wholly in accord with the purposes of R.C. 1343.03 and with the standards set forth in Kalain, supra, and Moskovitz, supra. Accordingly, the second assignment of error is not well-taken.
By the third assignment of error, defendants contend that the trial court erred in denying their motion to offset the $50,000 verdict with the $10,000 settlement plaintiff received from Doctors. The court found:
 The Court finds a mere acknowledgment is not an agreement and Defendant is not a third party beneficiary to the settlement agreement with Doctors' Hospital. Accordingly the Court concludes that Fidieholtz v. Peller, 81 Ohio St. 197 [sic] controls the outcome of this case, and the Defendant is not entitled to a set off of $10,000.00 dollars from the Jury Verdict.
In Fidelholtz v. Peller (1998), 81 Ohio St.3d 197, the Supreme Court of Ohio interpreted when setoff, pursuant to R.C. 2307.33(F),[7] is available. Fidelholtz involved a medical malpractice tort claim against two pathologists who failed to properly diagnose a malignant growth on Mrs. Fidelholtz's leg. As a result of the untimely diagnosis, Mrs. Fidelholtz's leg had to be amputated. She and her husband filed a complaint against both pathologists. One of the pathologists settled before trial for $125,000. A jury then awarded the Fidelholtzes $250,001. Upon the non-settling defendant's motion for judgment notwithstanding the verdict, the trial court reduced the award by the $125,000 the Fidelhotzes received from the settling defendant. The trial court relied upon R.C. 2307.32(F) and Zeigler v. Wendel Poultry Serv., Inc. (1993), 67 Ohio St.3d 10, which held that the amount received in settlement from one defendant should automatically be deducted from a jury award against another. Fidelholtz, supra, at 199. The Fidelholtz court overruled Zeigler and reversed the trial court's decision to offset the award by the amount of the settlement. Id. at 203. The court held at the syllabus:
 * * * R.C. 2307.32(F) * * * entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person "liable in tort." A person is "liable in tort" when he or she acted tortiously and thereby caused damages. This determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself.
At page 203, the court further held:
 We hold that payments made to appellants by defendants who were not determined to be a persons "liable in tort" do not entitle appellees to a setoff.
Defendants argue that they are entitled to a setoff because plaintiff's settlement agreement with Doctors contains the following specific language indicating that any verdict obtained by plaintiff would be setoff by the $10,000 received from Doctors:
 * * * [I]t is understood and intended that the sum of $10,000 paid to the undersigned is accepted by the undersigned with the acknowledgement of the undersigned that any verdict obtained by the Plaintiff in a trial of the claims asserted in case number 98CVA-05-3543 shall be reduced by the amount paid in consideration of this Settlement Agreement.
Plaintiff argues that the use of the term "acknowledgement" within the foregoing paragraph renders the paragraph unenforceable because an "acknowledgement" does not constitute an agreement absent an express agreement to the contrary. Further, since an "acknowledgement" is not an agreement made for the benefit of defendants, defendants are not third-party beneficiaries to the settlement agreement and thus have no standing to enforce the "setoff" provision.
We agree with defendants' contention that the trial court erred in denying their motion for setoff. We do not accept plaintiff's contention that the use of the term "acknowledgement" in the "setoff" paragraph renders that paragraph unenforceable. The case cited by plaintiff in support of this argument, Harmon v. Philip Morris, Inc. (1997),120 Ohio App.3d 187, is inapposite, as it is not concerned with the specific issue raised in this case. Furthermore, the term "acknowledgement" cannot be construed in isolation. It must be read within the context of the whole paragraph. Youngstown State Univ. Assoc. of Classified Employees v. Youngstown State Univ. (1994),99 Ohio App.3d 199, 201-202. The entire paragraph expressly states that any verdict obtained by plaintiff "shall be" offset by the amount of the settlement agreement.
In addition, we do not accept plaintiff's contention that defendants are not entitled to a setoff (pursuant to the aforementioned express language of the settlement agreement) because they are not third-party beneficiaries to the contract between plaintiff and Doctors. Fidelholtz, supra, does not mention anything about third-party beneficiaries, and we decline to adopt plaintiff's suggestion that an agreement between a plaintiff and a settling defendant must appear to have been entered into directly or primarily for the non-settling defendant's benefit in order for the non-settling defendant to enforce language contained therein. Furthermore, the "setoff" paragraph may be construed to afford third-party beneficiary status to Doctors' co-defendants, as that paragraph expressly states that "any verdict obtained by the Plaintiff in the trial of the claims asserted * * * shall be reduced by the amount paid in consideration for the Settlement Agreement." This clause clearly provides a benefit by way of an offset for Doctors' co-defendants who are unsuccessful at trial. Accordingly, the third assignment of error is well-taken.
For the foregoing reasons, the first and second assignments of error are overruled and the third assignment of error is sustained. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part, and reversed in part and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
 _________________ PETREE, J.
BRYANT, P.J., and DESHLER, J., concur.
[1] Plaintiff voluntarily dismissed the complaint against Doctors on January 31, 2000, pursuant to a $10,000 settlement agreement executed by plaintiff that same day.
[2] The record reveals that at the pre-trial hearing on April 7, 2000, defendants requested permission to identify an expert witness past the June 2, 1999 cutoff date set for supplemental disclosure of witnesses. Plaintiff filed a motion in limine on April 17, 2000, seeking an order prohibiting defendants from calling any expert witnesses at trial or from calling any employee or representative of T.C. Hobbs to give expert testimony. The motion was unopposed. By decision and entry dated May 12, 2000, the trial court sustained plaintiff's motion.
[3] The case was transferred to a visiting judge on May 19, 2000.
[4] The record shows that the depositions of Drs. Ruben, Benjoya and Palfin were never filed in the trial court. However, because defendants raised no objection in the trial court and referenced the deposition testimony in their memorandum contra to the motion for prejudgment interest, the evidence could be considered by the trial court. Cf. Cooper v. Red Roof Inns, Inc. (Mar. 30, 2001), Franklin App. No. 00AP-876, citing Boydston v. Norfolk S. Corp. (1991), 73 Ohio App.3d 727, 731, fn. 2.
[5] Am.Sub.H.B. 350, enacted January 27, 1997, modified R.C. 1343.03(C) to allow prejudgment interest only from the date the plaintiff gave the defendant written notice of the cause of action or filed the complaint until the date the judgment was rendered. However, Am.Sub.H.B. 350 was declared unconstitutional in toto in State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451. Therefore, Am.Sub.H.B. 350 is to be treated as though it were never enacted. See Keith v. Spectrum Sportswear, Inc. (1997), 120 Ohio App.3d 30, 33. In the instant case, the parties and the trial court properly disregarded the newer version of R.C. 1343.03(C) and applied the pre-amendment version of the statute.
[6] There is no suggestion that Galmish provided the trial court with a copy of the trial transcript.
[7] R.C. 2307.32(F) was amended and renumbered R.C. 2307.33(F) by Am.Sub.H.B. 350, effective January 27, 1997. As previously noted, the Ohio Supreme Court found Am.Sub.H.B. 350 unconstitutional in toto. Ohio Academy of Trial Lawyers, supra. Because a decision of the Ohio Supreme Court finding a statute unconstitutional is generally given retrospective application, Wendell v. AmeriTrust Co., N.A. (1994), 69 Ohio St.3d 74,77, we must refer to former R.C. 2307.32(F), which provides: "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person * * * the following apply: (1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury or loss * * * unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; (2) The release or covenant discharges the tortfeasor to whom it was given from all liability for contribution to any other tortfeasor."